[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 1.]

THE STATE OF OHIO, APPELLEE, *v*. SCOTT, APPELLANT.

[Cite as *State v. Scott*, 2001-Ohio-148.]

*Criminal law—Aggravated murder—Death penalty—Claim of incompetency under R.C. 2949.28(A) dismissed for want of probable cause—No prohibition against cruel and unusual punishment precludes the execution of mentally ill persons who understand their crimes and the capital punishment they face—R.C. 2949.28(B) does not require a hearing to determine probable cause—Burden to challenge competency is on the defense—R.C. 2949.29(C).*

(No. 01-807—Submitted May 10, 2001—Decided May 11, 2001.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 79506.

————————————

*Per Curiam.*

{¶ 1} Respondent, Jay D. Scott, was convicted of the aggravated murder of Vinnie M. Prince and sentenced to death. Scott appealed, and the court of appeals affirmed his conviction and sentence. *State v. Scott* (June 3, 1985), Cuyahoga App. No. 48609, unreported, 1985 WL 9047. We also affirmed Scott's conviction and death sentence. *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55.

{¶ 2} Scott's state postconviction proceedings concluded on January 12, 1994, when we refused to accept jurisdiction. *State v. Scott* (1994), 68 Ohio St.3d 1426, 624 N.E.2d 1064, certiorari denied, *Scott v. Ohio* (1994), 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825.

{¶ 3} Finally, the federal court of appeals denied Scott's application for habeas relief in *Scott v. Mitchell* (C.A.6, 2000), 209 F.3d 854, certiorari denied

(2000), 531 U.S. ___, 121 S.Ct. 588, 148 L.Ed.2d 503. We set Scott's execution date for April 17, 2001. *State v. Scott* (2001), 91 Ohio St.3d 1424, 741 N.E.2d 535.

{¶ 4} On April 10, 2001, Scott's attorneys filed a motion in the Cuyahoga County Court of Common Pleas claiming that Scott is incompetent to be executed under the standards set forth in R.C. 2949.28(A). After a hearing to determine probable cause, the trial court found that no probable cause existed to warrant further proceedings to determine whether Scott was insane as defined in R.C. 2949.28(A). On April 16, 2001, the trial court dismissed the matter without further hearing.

{¶ 5} On April 17, we stayed Scott's execution after the court of appeals requested that we do so. The court of appeals affirmed the trial court's dismissal on April 20, 2001. *State v. Scott* (Apr. 20, 2001), Cuyahoga App. No. 79506, unreported, 2001 WL 406583. Thereafter, we set a new execution date of May 15, 2001, 91 Ohio St.3d 1499, 746 N.E.2d 192.

{¶ 6} The cause is now before this court upon a discretionary appeal from the court of appeals' judgment affirming the trial court's dismissal.

{¶ 7} Scott raises three issues in this appeal. First, Scott argues that the ban on cruel and unusual punishment in the United States Constitution's Eighth Amendment and Section 9, Article I of the Ohio Constitution bars Ohio from executing any person with a biologically based severe mental illness such as schizophrenia. However, Scott cites no authority, and we are not aware of any authority, that supports Scott's claim that the prohibitions against cruel and unusual punishment of the Eighth Amendment and the Ohio Constitution preclude the execution of mentally ill persons who understand their crimes and the capital punishment that they face.

{¶ 8} Scott also argues that he should not be executed because the Supreme Court of the United States has recently granted certiorari to review whether mentally retarded persons can be executed. See *McCarver v. North Carolina*,

2

certiorari granted (2001), 532 U.S. ___, 121 S.Ct. 1401, 149 L.Ed.2d 132. However, that case has nothing to do with Scott's appeal, since Scott is not and does not claim to be mentally retarded. As the court of appeals stated, "While *McCarver* may deal with questions involving the baseline intelligence of mentally retarded individuals and whether they may be incapable of the understanding required under *Ford,* Scott's contention ignores his capacity to understand the reasons for and nature of the death penalty." *State v. Scott* (Apr. 20, 2001), Cuyahoga App. No. 79506, unreported, at 11, 2001 WL 406583, citing *Ford v. Wainwright* (1986), 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335. Thus, this contention has no merit.

{¶ 9} R.C. 2949.28(A) defines sanity for purposes of determining a convict's competency to be executed. The issue to be resolved under R.C. 2949.28 is whether the convict has the "mental capacity to understand the nature of the death penalty and why it was imposed upon the convict."

{¶ 10} The trial court considered the briefs and other matters submitted by the parties and conducted a hearing to determine if probable cause existed to believe that the convict was insane. For future reference, R.C. 2949.28(B) does not require a hearing to determine probable cause. Instead, R.C. 2949.28(B)(2) simply requires that "a judge shall determine, based on the notice and any supporting information, any information submitted by the prosecuting attorney, and the record in the case, including previous hearings and orders, *whether probable cause exists to believe that the convict is insane*." (Emphasis added.) If the trial court can make the probable cause determination without a hearing, then no hearing is required.

{¶ 11} In this case, even after a hearing, Scott had presented no medical or psychiatric testimony or expert testimony of any nature showing that he is insane, as defined, or that further proceedings are warranted to consider the issue. Indeed, the trial court made specific findings of fact on Scott's mental condition in determining that no probable cause existed to question whether Scott was

competent to be executed. While finding that Scott has suffered from chronic undifferentiated schizophrenia since 1994, the trial court found no evidence that Scott did not "understand the nature of the death penalty and/or why it is being imposed upon him." We find that the trial court properly evaluated the evidence that related to Scott's competency to be executed using the definition of insanity set forth in R.C. 2949.28(A).

{¶ 12} Moreover, the trial court's detailed findings of facts support its determination that there was no probable cause to believe that Scott was incompetent to be executed. We find no evidence from the record of the proceedings that the trial court abused its discretion in making these findings. Therefore, Scott's first proposition has no merit.

{¶ 13} In his second issue, Scott argues that the test for determining competency to be executed as set forth in *Ford v. Wainwright* is no longer adequate in light of contemporary medical and psychiatric standards and should be replaced.

{¶ 14} Ohio's current law governing competency to be executed, R.C. 2949.28 and 2949.29, was enacted in 1998 and was modeled after the Supreme Court's decision in *Ford*. As Justice Powell explained in his concurring opinion in that case, whether a convict is competent to be executed for Eighth Amendment purposes turns solely on whether the convict is aware of his impending execution and the reasons for it: "If the defendant perceives the connection between his crime and his punishment, the retributive goal of the criminal law is satisfied. And only if the defendant is aware that his death is approaching can he prepare himself for his passing. Accordingly, I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." 477 U.S. at 422, 106 S.Ct. at 2608, 91 L.Ed.2d at 354 (Powell, J., concurring).

{¶ 15} Recently, the United States Court of Appeals for the Sixth Circuit has reaffirmed Justice Powell's competency standard in *Ford*. In *Coe v. Bell*

4

(C.A.6, 2000), 209 F.3d 815, 826, the court stated that an equivalent of "Justice Powell's standard, that 'only those who are unaware of the punishment they are about to suffer and the reason they are to suffer it are entitled to a reprieve,' satisfies due process and is not an unreasonable interpretation of Supreme Court precedent."

{¶ 16} The defense complains that Scott's schizophrenia and other forms of mental illness are not included in the trial court's consideration of a convict's competency to be executed. To the contrary, under the provisions of R.C. 2949.28(B)(2), the trial court shall consider "any supporting information" in determining whether probable cause exists to believe that the convict is insane. Here, the trial court fully considered defense medical testimony showing that Scott suffered from schizophrenia. However, the trial court found that Scott's schizophrenia did not affect Scott's competency to be executed, and properly rejected Scott's claim. Thus, we find that R.C. 2949.28 properly incorporates the *Ford* standard for weighing claims of competency to be executed and reject Scott's second proposition.

{¶ 17} In his third proposition, Scott argues that R.C. 2949.28 and 2949.29 are unconstitutional by failing to properly allocate the burden of proof. Scott asserts that the state must bear the burden of proving that all condemned prisoners are competent to be executed.

{¶ 18} Scott claims that the trial court arbitrarily assigned the burden of proof to the defense during the probable cause inquiry. However, sanity and competence are generally presumed. One who challenges either mental responsibility for crimes or competence to be tried must bear the burden of proof to challenge those presumptions. See *State v. Austin* (1905), 71 Ohio St. 317, 73 N.E. 218; R.C. 2945.37(G), 2901.05(C)(2), and 2901.01(A)(14).

{¶ 19} Moreover, R.C. 2949.29 states that the burden of proof to challenge competency is on the defense. R.C. 2949.29(C) provides: "In all proceedings under this section, the convict is presumed not to be insane, and the court shall find that

the convict is not insane unless the court finds by a preponderance of the evidence that the convict is insane." Thus, the trial court properly found that "the burden of proof is on the defense to show probable cause that Mr. Scott fits the definition of insanity as outlined in O.R.C. § 2949.28."

{¶ 20} Finally, placing the burden of proof on Scott to prove probable cause or to prove by a preponderance of the evidence that he is incompetent to be executed does not violate Scott's constitutional protections.

{¶ 21} In *Medina v. California* (1992), 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353, the Supreme Court held that a state may presume that the defendant is competent to be tried and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. In so ruling, the court held that a state's procedure regarding the burden of proof in the criminal context will not be prohibited unless " 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Id.* at 445, 112 S.Ct. at 2577, 120 L.Ed.2d at 363, quoting *Snyder v. Massachusetts* (1934), 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677. After examining the historical and modern treatment of the burden of proof in competency proceedings and the requirements of fundamental fairness, the court concluded that placing this burden on a criminal defendant satisfies due process. *Id.* at 446-449, 112 S.Ct. at 2577-2579, 120 L.Ed.2d at 363-366.

{¶ 22} In *Ford*, Justice Powell stated that a convict in proceedings to determine competency to be executed does not make his claim of insanity against a "neutral background." On the contrary, "in order to have been convicted and sentenced, petitioner must have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court. The State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger a hearing process." (Footnote omitted.) *Ford,*

477 U.S. at 425-426, 106 S.Ct. at 2610, 91 L.Ed.2d at 356-357 (Powell, J., concurring).

{¶ 23} Moreover, the United States Court of Appeals for the Sixth Circuit has ruled that Tennessee's statute on competency to be executed properly placed the burden of proof on the convict to prove his incompetency by a preponderance of the evidence. *Coe v. Bell*, 209 F.3d at 827-828. In so ruling, the court concluded that in light of *Medina*, it saw "no reason why a prisoner's competency to be executed should be treated more strictly than a criminal defendant's competency to stand trial for the purpose of due process." *Id.* at 828. We therefore find that the trial court properly interpreted R.C. 2949.29(C).

{¶ 24} For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs separately.

PFEIFER, J., dissents.

_____

**COOK, J., concurring.**

{¶ 25} Though I agree with the majority's disposition of this case, I write separately to explain my reasons for doing so and to register my disagreement with portions of the majority's analysis.

Propositions of Law I and II

{¶ 26} Scott's first two propositions of law address the constitutionality of executing a convict diagnosed with a mental illness such as schizophrenia. Scott contends that "evolving standards of decency" now preclude the execution of a severely mentally ill person. The majority addresses Scott's constitutional claims on the merits and rejects them. I agree that Scott's constitutional claims lack merit.

But as I noted in my dissent from this court's allowance of Scott's discretionary appeal, Scott's argument on "evolving standards of decency" is not properly before this court. See *State v. Scott* (2001), 91 Ohio St.3d 1268, 747 N.E.2d 242 (Cook, J., dissenting).

{¶ 27} On April 10, 2001, Scott filed in the trial court an R.C. 2949.28 "Notice of Apparent Insanity and, in the Alternative, His Motion for a Judicial Determination that It Violates the Ohio and United States Constitutions to Execute a Person with a Diagnosed Severe Mental Illness." R.C. 2949.28, however, does not provide a proper procedural vehicle by which Scott can challenge the constitutionality of carrying out the execution of a person who has been diagnosed with a severe mental illness such as schizophrenia. Instead, R.C. 2949.28 only provides a vehicle through which a person sentenced to death can contest the execution of that sentence when he or she is *insane* as defined in R.C. 2949.28(A). The statutory scheme neither provides a movant with the ability to assert alternative constitutional arguments nor empowers the trial court to address such arguments.

{¶ 28} But construing the dual nature of Scott's filing in a light most favorable to him, his alternative motion to declare unconstitutional the Ohio death penalty scheme as applied to severely mentally ill individuals is in truth a petition for postconviction relief. This court has previously held, "Where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *State v. Reynolds* (1997), 79 Ohio St.3d 158, 679 N.E.2d 1131, syllabus. In this instance, Scott in effect argues that his status as a severely mentally ill individual warrants correction of his sentence. And because Scott has previously filed a postconviction relief petition, this court must construe his filing as a *successive* postconviction relief petition under R.C. 2953.23(A).

8

{¶ 29} R.C. 2953.23(A)(1) provides that "a court may not entertain * * * a second petition or successive petitions * * *" unless "[e]ither of the following applies":

"(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

"(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right."

{¶ 30} Additionally, Scott must also satisfy R.C. 2953.23(A)(2), which precludes consideration of successive petitions unless "[t]he petitioner shows by clear and convincing evidence that, but for constitutional error *at trial*, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error *at the sentencing hearing*, no reasonable factfinder would have found the petitioner eligible for the death sentence." (Emphasis added.)

{¶ 31} Scott has failed to satisfy R.C. 2953.23(A)(2) because he does not allege a constitutional error that occurred *at trial*. Instead, he argues that, because he was diagnosed as schizophrenic *following* trial, it is unconstitutional to carry out his sentence of death. Scott's failure to satisfy R.C. 2953.23(A)(2) renders moot any analysis of Scott's ability to satisfy the (A)(1) factors.

{¶ 32} In his jurisdictional memorandum, Scott arguably tried to overcome the (A)(2) procedural hurdle by arguing that evidence of his mental illness was not presented to the jury, thereby "cast[ing] a dark shadow over the death sentence that was imposed." Scott thus implied that the jury might not have sentenced him to

death had it known of his schizophrenia.  He makes no such argument in his merit brief.

{¶ 33} Even assuming *arguendo* that Scott's successive postconviction relief petition satisfies R.C. 2953.23(A)(2) by raising a defect "at the sentencing hearing," his petition is still procedurally barred for its failure to satisfy R.C. 2953.23(A)(1)(a) or (b).  Scott cannot satisfy (A)(1)(a) because he cannot establish that he was "unavoidably prevented" from discovering his schizophrenia.  Scott's own brief admits that "[i]n 1974, one prison doctor noted that Mr. Scott was 'apparently psychotic and should perhaps be diagnosed as chronic schizophrenic.' "  And Scott fails to satisfy (A)(1)(b) because he makes no argument that the United States Supreme Court has recognized a new federal or state right that applies retroactively to him.  Indeed, Scott seeks a *new* constitutional rule in this very case, based on what he perceives as "evolving standards of decency" and/or an analogy between his condition and mental retardation.

{¶ 34} For the foregoing reasons, it is unnecessary to determine the actual merits of the constitutional arguments raised in Scott's first two propositions of law.

Proposition of Law III

{¶ 35} In his third proposition of law, Scott asserts that (1) the lower court improperly placed the burden of establishing probable cause on him, (2) the court of appeals denied him due process by requiring that he satisfy an unreasonably high standard of probable cause, and (3) he was not afforded a full-fledged statutory inquiry on his competency.  Scott also attacks R.C. 2949.28 and 2949.29 as being "void for vagueness" because the statutes do not define "probable cause," do not assign the burden of establishing probable cause, and fail to assign the burden of proving insanity.  Each of these claims fails.  Scott's attacks on the R.C. 2949.28 probable cause determination are predicated upon a misinterpretation of the statute.

And Scott cannot attack R.C. 2949.29's allocation of the burden of proving insanity because he never reached a proceeding under that statute.

{¶ 36} Scott fails to recognize that "probable cause" is a term of art. As early as 1813, the United States Supreme Court noted that "the term 'probable cause' * * * has a fixed and well known meaning." *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364, 367. A finding of probable cause requires more than a mere suspicion of guilt but less evidence than that required to sustain a conviction. See *Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879, 1890. See, also, *Melanowski v. Judy* (1921), 102 Ohio St. 153, 156, 131 N.E. 360, 361, citing *Ash v. Marlow* (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus (defining probable cause as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged"). More recently, we stated that probable cause is "a term that has been defined as ' "a reasonable ground for belief of guilt." ' " *State v. Moore* (2000), 90 Ohio St.3d 47, 49, 734 N.E.2d 804, 807, quoting *Carroll v. United States* (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555.

{¶ 37} In rejecting Scott's arguments concerning the burdens under R.C. 2949.28 (probable cause determination) and 2949.29 (insanity inquiry), the majority relies in part on R.C. 2949.29(C). This provision states, "In all proceedings under this section, the convict is presumed not to be insane, and the court shall find that the convict is not insane unless the court finds by a preponderance of the evidence that the convict is insane." The majority appears to interpret this provision as placing the burden of proof on the defense throughout *all* stages of competency to be executed proceedings.

{¶ 38} But this conclusion ignores both the scope of the statute and the nature of a probable cause determination. By its own terms, R.C. 2949.29(C)

applies only to proceedings "under *this section*." (Emphasis added.) The statutory section that "this section" refers to is R.C. 2949.29, not R.C. 2949.28. The latter statute serves a gatekeeping function; it is only *after* the court determines that there is probable cause to believe that the convict is insane—as insanity is defined in R.C. 2949.28(A)—that R.C. 2949.29 becomes relevant. In the absence of probable cause to believe that the convict is insane, the presumption of sanity and the burden of proof required by R.C. 2949.29 never apply.

{¶ 39} The majority's interpretation is logically inconsistent, because R.C. 2949.28 provides for a probable cause determination. Such a proceeding requires the production of sufficient evidence to establish that there is reason to *believe* that the convict is insane. This differs from requiring actual proof that the convict *is* insane. No probable cause determination in any area of the law equates to actual proof of the issue involved. We do not, for example, deem a juvenile defendant's guilt conclusively proved following transfer from a juvenile court, even though bindover requires that the juvenile court found probable cause to exist. Rather, transfer occurs because there is reason to believe that the juvenile committed the alleged acts. See Juv.R. 30. Following transfer, the state must still prove that the defendant committed such acts. Similarly, a law enforcement officer seeking issuance of a search warrant need not establish, by any quantum of proof, that contraband is actually located at the place to be searched. The officer merely bears the burden of presenting sufficient facts from which a neutral magistrate could conclude that " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George* (1989), 45 Ohio St.3d 325, 329, 544 N.E.2d 640, 644, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. Nothing in R.C. 2949.28 dictates that the probable cause determination under that section should operate differently.

{¶ 40} The majority's interpretation is flawed because R.C. 2949.29(C) is written in the conjunctive. That is, that statute's presumption of sanity *and*

preponderance-of-the-evidence requirement apply *together*. By attaching the presumption of sanity to an R.C. 2949.28 proceeding, the majority also attaches the corollary burden of *proof*. But R.C. 2949.28 imposes only the burden of *producing* credible evidence to establish probable cause, not the burden of *proving* insanity by a preponderance of the evidence. The majority erroneously blurs the line between two distinct proceedings. The requirements of R.C. 2949.29 are relevant only once the convict satisfies the requirements of R.C. 2949.28. Otherwise, the statutory scheme would require a convict to demonstrate that there is probable cause to believe that he or she is insane, *while at the same time* proving by a preponderance of the evidence that he or she is insane. The statutory scheme does not provide for such an inconsistent approach, and the majority should not interpret it in a manner that would create such a logical and procedural—as well as constitutional—mess.

{¶ 41} Scott never satisfied the R.C. 2949.28 requirement of establishing probable cause to believe that he is insane. Thus, a full statutory inquiry on Scott's competency was never required. Nonetheless, the majority proceeds to address whether the statutory placement of the burden of proof at an R.C. 2949.29 hearing is constitutional. But there could be no error in this case, much less reversible error, predicated on an R.C. 2949.29 hearing, because there was no R.C. 2949.29 hearing here. The majority therefore reaches and resolves an issue that is not presented by this case.

{¶ 42} With the foregoing reservations, I concur in the judgment of affirmance.

---

**PFEIFER, J.**, **dissenting.**

{¶ 43} When the Constitution of the United States was ratified, slavery was legal and women could not vote. At various times in our country's past, states tortured prisoners and performed barbaric executions, including flogging,

castration, drowning, pressing, and sawing-in-half. Rutledge, The Definitive Inhumanity of Capital Punishment (1998), 20 Whittier L.Rev. 283, 286-287. Over the years, our society evolved. Slaves were emancipated and women enfranchised. Thirteenth and Nineteenth Amendments to the United States Constitution. States can no longer legally torture prisoners or perform barbaric executions. Eighth Amendment to the United States Constitution. See *Wilkerson v. Utah* (1878), 99 U.S. 130, 136, 25 L.Ed. 345, 348; *Whitley v. Albers* (1986), 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251, 260-261; *Furman v. Georgia* (1972), 408 U.S. 238, 295-297, 92 S.Ct. 2726, 2755-2756, 33 L.Ed.2d 346, 382 (Brennan, J., concurring).

{¶ 44} The Supreme Court of the United States has stated that "[t]he basic concept underlying the [the Cruel and Unusual Punishments Clause of the] Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards." *Trop v. Dulles* (1958), 356 U.S. 86, 100, 78 S.Ct. 590, 597-598, 2 L.Ed.2d 630, 642. Therefore, the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* at 101, 78 S.Ct. at 598, 2 L.Ed.2d at 642.

{¶ 45} The Eighth Amendment prohibits torture and barbaric executions because they do not comport with human dignity. *Furman*, 408 U.S. at 270, 92 S.Ct. at 2742, 33 L.Ed.2d at 367 (Brennan, J., concurring) ("[T]he Cruel and Unusual Punishments Clause prohibits the infliction of uncivilized and inhuman punishments. The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings. A punishment is 'cruel and unusual,' therefore, if it does not comport with human dignity."). See, also, *id.,* 408 U.S. at 345, 92 S.Ct. at 2780, 33 L.Ed.2d at 410 (Marshall, J., concurring) ("[T]he Eighth Amendment is our insulation from our baser selves.").

**{¶ 46}** The Ohio Constitution has its own prohibition against cruel and unusual punishments. Section 9, Article I of the Ohio Constitution. The Ohio Constitution is a document of independent force and Section 9, Article I is and has always been a protection of the people that is independent of the protection provided by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus. Our Cruel and Unusual Punishments Clause must provide at least as much protection as the Eighth Amendment. *Id.* I believe it should provide more.

**{¶ 47}** When the Supreme Court of the United States sets constitutional standards, it does so for the entire country and therefore considers the ethos of the entire country. Our Constitution is not the product of the deeply conservative South or of the liberal Northeast. The Ohio Constitution is the product of Ohio, an enlightened, progressive state. When Ohioans consider the countries that still practice slavery, we call them uncivilized; when Ohioans consider the countries that do not permit women to vote, we call them repressive; when Ohioans consider the countries that commit state-sponsored torture, we call them barbaric.

**{¶ 48}** This court has a chance to take a step toward being a more civilized and humane society. This court could declare that in the interests of protecting human dignity, Section 9, Article I of the Ohio Constitution prohibits the execution of a convict with a severe mental illness. I believe that the "evolving standards of decency that mark the progress of" Ohio call for such a judicial declaration.

**{¶ 49}** Jay D. Scott is in no other way a sympathetic man. He is a twice-convicted murderer who does not appear to express remorse for his crimes. But I cannot get past one simple irrefutable fact: he has chronic, undifferentiated schizophrenia, a severe mental illness. Mental illness is a medical disease. Every year we learn more about it and the way it manifests itself in the mind of the sufferer. At this time, we do not and cannot know what is going on in the mind of a person with mental illness. As a society, we have always treated those with

mental illness differently from those without. In the interest of human dignity, we must continue to do so.

{¶ 50} Executing Jay D. Scott says more about our society than it says about him. Executing him will be another assertion of our country's place in the world with China, Congo, Iran, and Saudi Arabia as the five countries that year after year perform the most state-sanctioned executions. Executing him will be another assertion that taking the life of a person with mental illness is no different than taking the life of someone without mental illness. Executing him will be an assertion that taking the life of a person with mental illness serves a purpose that keeping him securely in prison for the rest of his life does not. Executing him will be an assertion that only some life is precious or sacred. I believe Ohioans are better than that.

{¶ 51} Section 9, Article I prohibits cruel and unusual punishments. I believe that executing a convict with a severe mental illness is a cruel and unusual punishment. Accordingly, I take up the torch initially lit by former Justice J. Craig Wright, who stated: "I cannot sanction the penalty of death for a person who appears to be mentally ill." *State v. Berry* (1995), 72 Ohio St.3d 354, 367, 650 N.E.2d 433, 444 (Wright, J., dissenting). In this case, there is no doubt about the mental illness; the trial court found that Jay D. Scott has schizophrenia, a severe mental illness. I cannot sanction his execution. I dissent.

—————————

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *L. Christopher Frey*, Assistant Prosecuting Attorney; *Betty D. Montgomery,* Attorney General, *David M. Gormley*, State Solicitor, and *James V. Canepa*, Assistant Attorney General*,* for appellee.

*Gold, Schwartz & Co., L.P.A.,* and *John S. Pyle; Law Office of Timothy Farrell Sweeney* and *Timothy F. Sweeney*, for appellant.

*David C. Stebbins, Alan R. Rossman* and *David L. Doughten*, urging reversal for *amicus curiae* Ohio Association of Criminal Defense Lawyers.

_____