[Cite as *State v. Brooks*, 2011-Ohio-5877.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 97455 and 97509**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## REGINALD BROOKS

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeals from the
Cuyahoga County Court of Common Pleas
Case No. CR-172340

**BEFORE:** Boyle, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 14, 2011

**ATTORNEYS FOR APPELLANT**

Michael J. Benza
The Law Office of Michael J. Benza
17850 Geauga Lake Road
Chagrin Falls, Ohio   44023

Alan C. Rossman
Assistant Federal Public Defender
Capital Habeas Unit
1660 West Second Street, #750
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Matthew E. Meyer
        Katherine Mullin
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Reginald Brooks, is scheduled to be executed on Tuesday, November 15, 2011.   In this consolidated appeal, Brooks appeals the trial court's judgment finding him competent to be executed and the trial court's denial of his motion for leave to file a motion for new trial.    We affirm.

Procedural History and Facts

{¶ 2} In 1983, a three-judge panel convicted Brooks of three charges of aggravated murder and sentenced him to death for the shooting of his three sons — Reggie Jr. (age 17), Vaughn (age 15), and Niarchos (age 11). For nearly three decades, Brooks has sought to overturn his conviction and sentence through the state and federal courts — all of which have been unsuccessful. See, e.g., *State v. Brooks* (Aug. 15, 1985), 8th Dist. No. 48914 (direct appeal), (1986), 25 Ohio St.3d 144, 495 N.E.2d 407 (decision affirmed); *State v. Brooks* (June 17, 1999), 8th Dist. No. 73729 (affirming trial court's denial of postconviction relief), (2000), 88 Ohio St.3d 1432, 724 N.E.2d 809 (discretionary appeal denied); and *State v. Brooks* (Nov. 9, 2000), 8th Dist. No. 48914 (application to reopen under App.R. 26(B) denied), (2001), 92 Ohio St.3d 537, 751 N.E.2d 1040 (decision affirmed). See, also, *Brooks v. Bagley* (C.A.6, 2008), 513 F.3d 618 (rejecting Brooks's federal habeas claim).

{¶ 3} On March 1, 2011, the Ohio Supreme Court granted the state's motion to set Brooks's execution date, ordering that it occur on November 15, 2011. *State v. Brooks*, 128 Ohio St.3d 1408, 2011-Ohio-893, 942 N.E.2d 381.

{¶ 4} On August 23, 2011, Brooks filed a postconviction petition under R.C. 2953.21 and a motion for an evidentiary hearing pursuant to R.C. 2949.28, requesting that execution of his sentence be suspended pending an inquiry and determination of whether he meets the definition of insanity set forth in R.C. 2949.28(A). R.C. 2949.28 codified the United States Supreme Court holding in *Ford v. Wainwright* (1986), 477 U.S. 399,

106 S.Ct. 2595, 91 L.Ed.2d 335, that it is unconstitutional under the Eighth Amendment to execute one who does not have the mental capacity to understand the nature of the death penalty and why it was imposed upon the convict. A *Ford* claim under R.C. 2949.28 is not ripe until an execution date has been set for a defendant since competency to be executed cannot be determined until execution is imminent. *Panetti v. Quarterman* (2007), 551 U.S. 930, 946, 127 S.Ct. 2842, 168 L.Ed.2d 662, citing *Stewart v. Martinez-Villareal* (1998), 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849.

{¶ 5} On September 26, 2011, following a hearing, the trial court found that probable cause existed to believe that Brooks was presently insane within the meaning of R.C. 2949.28(A) and, therefore, was entitled to further proceedings on the insanity inquiry under the statute.

{¶ 6} On October 11, 2011, the trial court commenced the inquiry pursuant to R.C. 2949.29. The hearing lasted approximately four days, during which the trial court heard testimony from Brooks, defense expert Dr. Rahn Bailey, and state expert Dr. Stephen Noffsinger. The trial court also allowed the submission of a significant amount of documentary evidence, which included the original trial transcripts, Brooks's post-trial correspondence, numerous psychiatric or psychological reports, and telephone recordings. The inquiry concluded on October 20, 2011, and the trial court timely issued its written findings on October 21, 2011, concluding that Brooks is competent to be executed.

{¶ 7} One day prior to the trial court issuing its findings and judgment, Brooks moved the trial court for leave to file a motion for a new trial, alleging that the state withheld exculpatory evidence — evidence that Brooks only recently received in connection with the competency inquiry. Specifically, Brooks argued that the police reports and witness statements that were obtained during the homicide investigation but not turned over to him until this competency inquiry contained information regarding his mental condition, including the days and weeks, prior to the murders. He contended that this information was vital to his defense for several reasons: (1) it supported a not guilty by reason of insanity defense; (2) it demonstrated that he was incompetent to stand trial; (3) it negated the state's theory of "prior calculation and design"; or (4) it was relevant mitigating evidence in the penalty phase.

{¶ 8} On November 3, 2011, the trial court denied Brooks's motion for leave.

{¶ 9} Brooks has separately appealed the trial court's finding that he is competent to be executed and its denial of his motion for leave. We have consolidated the appeals for our review and now turn to the merits of his arguments.

Appeal No. 97455: Competency to be Executed

{¶ 10} In this appeal, Brooks raises the following three assignments of error:

{¶ 11} "I.   The trial court erred in ruling Mr. Brooks is competent to be executed.

{¶ 12} "II.   O.R.C. 2949.28(B)(3) is unconstitutional as applied to Mr. Brooks, denying him the right to due process and violating the 5th, 6th, 8th, and 14th Amendments to the Constitution.

{¶ 13} "III.   The fast paced state court process has deprived Mr. Brooks of his right to the effective assistance of counsel during this competency to be executed litigation."

### Competency Determination

{¶ 14} In his first assignment of error, Brooks argues that the trial court erred in finding him competent to be executed.   He contends that the trial court essentially applied *Ford* generally without adhering to the United States Supreme Court's more recent pronouncement in *Panetti v. Quarterman*, supra, that requires a convict to have a rational understanding of the connection between the underlying conviction and his sentence of execution.

A. *Standard of Review*

{¶ 15} Initially, before addressing the merits of Brooks's argument, we must set forth the applicable standard of review.   The fundamental question of whether the trial court properly denied Brooks's petition for postconviction relief by finding him competent to be executed is reviewed under an abuse of discretion standard.

{¶ 16} Adhering to the United State Supreme Court's holding in *Ford* and the principle that it is unconstitutional to execute a death sentence upon an insane convict, the

Ohio legislature has enacted R.C. 2949.28 and 2949.29 — that allow a convict to challenge his or her competency to be executed. Under R.C. 2949.29(C), a convict is presumed "not to be insane" and the convict bears the burden of proving insanity by a preponderance of the evidence.

{¶ 17} Indeed, the ultimate determination of whether a convict is insane is a factual determination made by the trial court after considering the evidence at the hearing. Therefore, absent a showing of an abuse of discretion, we will not overrule a trial court's findings on a petiton for postconviction relief that are supported by competent and credible evidence. See *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77. See, also, *State v. Scott*, 92 Ohio St.3d 1, 2001-Ohio-148, 748 N.E.2d 11 (applying an abuse of discretion standard of review to a challenge made under R.C. 2949.28).

B. *Application of Ford — Panetti Standard*

{¶ 18} The crux of Brooks's argument is that the trial court failed to apply the *Panetti* standard. Relying on the trial court's specific findings that (1) he is suffering from paranoid schizophrenia, and (2) he "presents with grandiose delusions regarding his past accomplishments and persecutory delusions that he has been framed" for the underlying murders, Brooks argues that the trial court could not have reasonably found him sane to be executed in light of *Panetti*. We find his argument to lack merit.

{¶ 19} In *Panetti*, the United States Supreme Court reversed the Fifth Circuit's decision and found that "the federal appellate court employed an improperly restrictive test when it considered petitioner's claim of incompetency on the merits." Id. at 935. The record on Panetti's *Ford* claim revealed that he had been hospitalized numerous times for psychiatric disorders, including fragmented personality, delusions, and hallucinations, and that he had numerous psychotic episodes and became convinced that the devil possessed his home. Although troubled by this evidence, the district court did not believe Panetti's delusions were relevant to his competency to be executed once it was established that Panetti was aware of the following: (1) that he murdered his wife's parents; (2) that he will be executed; and (3) the reason the state has given for the execution is his commission of the murders. The Fifth Circuit agreed with the district court's analysis on appeal, and its interpretation of *Ford* prompted the Supreme Court to step in and clarify *Ford's* application to competency determinations.

{¶ 20} Specifically, the Supreme Court held that *Ford* did not foreclose inquiry into whether a defendant has a rational understanding of the reasons for his execution once a court has found he can identify the stated reason for his execution. Id. at 959. The Court expressly rejected that *Ford* stands for the proposition that a prisoner's delusional belief system is irrelevant if "the prisoner knows that the State has identified his crimes as the reason for his execution." Id. at 958. Instead, *Panetti* holds that the inquiry into whether a capital defendant is insane is whether the prisoner is able to

understand the reasons for his punishment or whether he is unaware of why he is to suffer it. Id. at 959.[1]

{¶ 21} Under R.C. 2949.28(A), the term "insane," for purposes of the inquiry, is defined to mean "that the convict in question does not have the mental capacity to understand the nature of the death penalty and why it was imposed upon the convict." During the competency proceeding, Brooks was presumed not to be insane and the court could not find him to be so unless the court found by a preponderance of the evidence that he is insane. R.C. 2949.29(C).

{¶ 22} Here, we find no basis to conclude that the trial court unreasonably applied *Panetti* in concluding that Brooks failed to satisfy his burden of demonstrating that he is insane. Indeed, unlike the trial court in *Panetti*, there is no concern that the trial court did not consider all the evidence relevant to Brooks's mental illness in determining whether Brooks possessed a rational understanding of the connection between the underlying conviction and his sentence of execution. Although the trial court found Brooks to suffer from paranoid schizophrenia, *Panetti* does not stand for the proposition that a person suffering from paranoid schizophrenia may never be competent to be executed. Moreover, one does not have to admit that he committed the underlying

---

[1] We note that, despite reversing the lower courts, the United States Supreme Court did not declare that Panetti was incompetent to be executed; instead, it remanded the matter for the determination to be made by the lower court after a full hearing on the matter with the consideration of all relevant evidence, including expert medical testimony.

crimes.  Indeed, even under *Panetti*, one who suffers from delusions may still be found competent to be executed if those delusions do not prevent him from rationally understanding the connection between the underlying conviction and his sentence of execution.  And the fact that the trial court found Brooks to be suffering from paranoid schizophrenia does not belie its other findings or preclude a finding that Brooks failed to meet his burden under the statute.

{¶ 23} We find that the trial court strictly adhered to *Panetti*, considering all relevant evidence, and determined that Brooks possessed both a factual and *rational* understanding of (1) his crimes, (2) his impending death, and (3) the causal relationship between the murders and his punishment.  Indeed, relying on a recorded telephone call between Brooks and his brother on March 13, 2011, the trial court specifically found that Brooks "exhibited the knowledge that he is going to be executed" and "an understanding why he was sentenced to death,"  — that he had been convicted for the mass murder of his three sons.  Additionally, relying on Brooks's testimony and demeanor during his recent examination by Dr. Noffsinger, the trial court specifically found the following:

{¶ 24} "[Brooks] had the mental capacity to understand the nature of the death penalty and why it was imposed upon him.  In particular, [Brooks] understood that he had been charged with the murder of his three sons and convicted of the same by a three judge panel, after which that same panel sentenced him to death.  Defendant further

understood that his physical body would die upon receiving a lethal injection. Defendant was not psychotic or exhibiting signs of post-traumatic stress disorder."

{¶ 25} Accordingly, based on the evidence presented, which included Brooks's own testimony and the expert medical testimony, we find competent, credible evidence to support the trial court's determination.

{¶ 26} We find no abuse of discretion and overrule the first assignment of error.

Constitutionality of R.C. 2949.28

{¶ 27} In his second assignment of error, Brooks challenges the constitutionality of R.C. 2949.28(B)(3), which provides:

{¶ 28} "If the judge who is given notice under division (B)(1) of this section finds probable cause to believe that the convict is insane, the judge shall inquire into the convict's insanity at a time and place to be fixed by the judge and shall give immediate notice of the inquiry to the prosecuting attorney who prosecuted the case, or that prosecuting attorney's successor, and to the convict and the convict's counsel. The judge may hold the inquiry at the place at which the convict is confined. If the convict does not have counsel, the court shall appoint an attorney to represent the convict in the inquiry. The court may appoint one or more psychiatrists or psychologists to examine the convict. The court shall not appoint a psychiatrist or psychologist who is an employee of the department of rehabilitation and correction to examine the convict. *The court shall conduct any hearing under this section and section 2949.29 of the Revised*

*Code and issue any ruling in the matter no later than sixty days from the date of the notice given under division (B)(1) of this section.*"   (Emphasis added.)

{¶ 29} Brooks argues that the "statutory scheme's truncated time frame was simply insufficient to protect [his] right to a fundamentally fair hearing" and therefore is unconstitutional as applied to him.[2]   Specifically, he contends that "the 60 day time frame did not provide counsel with sufficient time to conduct an in-depth investigation of this kind."   He further contends that the statute fails to satisfy the basic mandate of *Ford*, which requires the state to afford a prisoner challenging his competency to be executed an adequate fact-finding procedure.   But the Sixth Circuit has already upheld Ohio's *Ford* statutes as being constitutional and complying with the dictates of *Ford*.   See *Scott v. Mitchell* (C.A.6, 2001), 250 F.3d 1011; *Bedford v. Bobby* (C.A.6, 2011), 645 F.3d 372.

{¶ 30} We find no basis to conclude that the 60-day time period deprived Brooks of due process.   Indeed, these proceedings specifically contemplate an accelerated schedule because (1) an execution date has been set, and (2) the competency inquiry goes directly to the convict's present state of mind.   Here, during the 60-day period, Brooks was afforded the opportunity to fully brief the issues, to retain a mental health expert and an investigator, to obtain discovery, and to fully present his evidence over the course of a four day hearing.   Further, within this time period, the trial court issued detailed findings of fact.   Indeed, the trial court took great lengths to ensure that Brooks was afforded a

---

[2] Although couched as an "as applied" constitutional challenge, Brooks's argument is

fair and complete hearing after providing him extensive leeway to gather evidence in support of his claim.

**{¶ 31}** Accordingly, because we find that Brooks was clearly afforded due process under both state and federal law, we find no merit to his argument and overrule the second assignment of error.

### Ineffective Assistance of Counsel

**{¶ 32}** In his final assignment of error related to competency, Brooks argues that the "truncated time frame" deprived him of his right to the effective assistance of counsel during the competency-to-be-executed litigation. But having already found the 60-day time period to be constitutional, we find no merit to this claim. Although Brooks claims that his counsel needed more time to conduct a full and adequate investigation into his background, he fails to demonstrate how he was prejudiced without this information. Moreover, based on the evidence and pleadings submitted in this case, Brooks's counsel in the competency-to-be- executed litigation has been far from deficient. The third assignment of error is overruled.

### Appeal No. 97509: Denial of Motion for Leave to File a Motion for a New Trial

**{¶ 33}** In challenging the trial court's denial of his motion for leave to file a motion for a new trial, Brooks raises the following four assignments of error:

---

attacking the general time period set forth in the statute, which amounts to a facial challenge.

{¶ 34} "I.  The trial court abused its discretion by erroneously denying leave to file the motion for new trial.

{¶ 35} "II.  The trial court abused its discretion in basing its ruling on a finding that assuming arguendo, that the statements offered as newly discovered mitigating evidence were not previously disclosed by the state, such evidence was not material.

{¶ 36} "III.  The trial court abused its discretion in basing its ruling on a finding that 'the statements support the conclusion that defendant was suffering from schizophrenia prior to and at the time he murdered his three sons; however the trial court already had before it similar information and, in fact, found defendant to be schizophrenic.'

{¶ 37} "IV.  The trial court abused its discretion in basing its ruling on a finding that 'it is clear defendant had information in his possession at the time of trial (via his investigator) and during post-trial proceedings (via affidavits from family and friends) upon which he could have moved for a new trial.[']"

{¶ 38} Brooks's four assignments of error are related, as he even states that his sole issue presented for review is: "Whether the trial court abused its discretion [in] denying Mr. Brooks leave to file a new trial motion."  Accordingly, we will address them together.

{¶ 39} We review a trial court's decision denying a motion for leave to file a motion for a new trial under an abuse of discretion. *State v. Yates*, 8th Dist. No. 96664,

2011-Ohio-4962, ¶5.  We therefore will not reverse the trial court's decision unless we find it to be unreasonable, arbitrary, or unconscionable.  Id.

{¶ 40} Crim.R. 33(B) states, in pertinent part:

{¶ 41} "Motions for new trial on account of newly discovered evidence *shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived*.  If it is made to appear by clear and convincing proof that the defendant was *unavoidably prevented* from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."   (Emphasis added.)

{¶ 42} "A party is 'unavoidably prevented' from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence."   *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶19, citing *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶7.

{¶ 43} In support of his motion for leave to file a motion for new trial, Brooks relies on witness statements and police reports contained in the prosecutor's file that he recently obtained in his competency-to-be-executed litigation.  According to Brooks, this information is exculpatory and should have been turned over by the prosecutor in his underlying trial.  In his motion, he argues that this evidence paints a clear picture that he

suffered from paranoid schizophrenia — evidence that would have supported a not guilty by reason of insanity defense at trial or would have been relevant in the mitigation phase of his capital proceeding.

{¶ 44} We agree with the trial court that Brooks has failed to satisfy his burden that "he was unavoidably prevented from filing a motion for new trial prior to this time despite due diligence." The record reveals that Brooks's mental illness has been at the heart of this litigation — including the mitigation phase of his sentencing — since its inception. And the issue of his suffering from paranoid schizophrenia is not a new revelation to the defense. Indeed, as noted by the Sixth Circuit in Brooks's habeas corpus appeal, the trial court had a diagnosis of paranoid schizophrenia before it. *Brooks v. Bagley*, 513 F.3d at 629. In fact, Brooks has already relied on some of the statements that he now argues constitutes "newly discovered evidence" when he filed his petition for postconviction relief in 1987. See *Bagley*. To the extent that he now has additional statements that he did not have in his possession prior to trial, we find that the trial court reasonably concluded that this evidence is duplicative or cumulative to evidence already in Brooks's possession, or that it could have been discovered with due diligence.

{¶ 45} Additionally, we find that the trial court reasonably denied leave to file a motion for a new trial because the granting of such leave would have been futile: Brooks cannot prevail on a *Brady* claim for a new trial or satisfy the *Petro* standard for a new trial based on the alleged "newly discovered evidence."

{¶ 46} In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court held that, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution."

{¶ 47} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus.

{¶ 48} The evidence relied on by Brooks in support of his motion was either known to him at trial or could have been obtained with reasonable diligence. See *Coe v. Bell* (C.A.6, 1998), 161 F.3d 320, 344 (recognizing that to implicate *Brady*, the withheld material evidence must be "wholly within the control of the prosecution"). For this same reason, his claim fails under *Petro*.

{¶ 49} Accordingly, because Brooks failed to establish by clear and convincing evidence that he was unavoidably prevented from the discovery of any new evidence that would entitle him to a new trial, we cannot say that the trial court abused its discretion in

denying Brooks leave to file a motion for a new trial. His four assignments of error in Appeal No. 97509 are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR