Jeffery Lee WOOD, TDCJ No. 999256, Petitioner,

v.

Nathaniel QUARTERMAN, Director, Texas Department of Criminal Justice, Criminal Institutions Division, Respondent.

Civil No. SA–01–CA–423–OG.

United States District Court, W.D. Texas, San Antonio Division.

Aug. 21, 2008.

J. Scott Sullivan, Law Offices of J. Scott Sullivan, San Antonio, TX, Jared Tyler, Texas Defender Service, Houston, TX, for Petitioner.

Tomee Morgan Heining, Office of the Attorney General Capitol Station, Austin, TX, for Respondent.

## ORDER GRANTING STAY OF EXECUTION

ORLANDO L. GARCIA, District Judge.

The matters before the Court are (1) petitioner's motion for appointment of counsel, docket entry no. 35, (2) petitioner's motion for leave to file *ex parte* request for expert assistance, docket entry no. 36, (3) petitioner's motion for stay of execution, docket entry no. 37, (4) petitioner's sealed *ex parte* motion for funding to obtain expert mental health assistance, docket entry no. 39, (5) respondent's opposition to stay of execution, docket entry no. 40, (6) respondent's opposition to motion for leave to file *ex parte* request for expert assistance, docket entry no. 41, and (7) petitioner's reply to respondent's opposition, docket entry no. 42.

All but the last of petitioner's pleadings and motions listed above were filed electronically on August 19, 2008, less than 50 hours before petitioner's scheduled execution at 6 p.m. on August 21, 2008. Respondent filed both his pleadings electronically before noon on August 20, 2008.

Petitioner's final pleading, docket entry no. 42, was filed August 20, 2008.

*Background*

The facts of petitioner's capital offense and subsequent trial, direct appeal, and state habeas corpus proceedings are set forth in detail in this Court's opinion denying petitioner federal habeas corpus relief. *Wood v. Dretke,* 386 F.Supp.2d 820, 825–35 (W.D.Tex.2005), *CoA denied,* 214 Fed. Appx. 473 (5th Cir.2007), *affirmed,* 491 F.3d 196 (5th Cir.2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 1087, 169 L.Ed.2d 825 (2008). It will suffice to note the evidence at petitioner's trial established petitioner participated in a pair of armed robberies of convenience stores which culminated in the fatal shooting of a store clerk by petitioner's accomplice Danny Reneau on January 22, 1996. Immediately following the fatal shooting, petitioner assisted Reneau in removing the store's safe, cash box, and videotape recorder. Petitioner also drove the get-away vehicle used in both robberies.

On or about August 14, 2008, far less than the 20 days prior to his scheduled execution required by applicable state law to obtain review by the Texas Court of Criminal Appeals,[1] petitioner filed a motion in his state trial court requesting appointment of counsel and appointment of a mental health expert to assist petitioner in investigating, developing, and presenting evidence supporting a claim that petitioner is currently incompetent to be executed and, thereby, at least temporarily exempt from the death penalty pursuant to the Supreme Court's recent decision in *Panetti v. Quarterman,* —— U.S. ——, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), and its prior decision in *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).

On August 17, 2008, the state trial court denied petitioner's motion with the cryptic notation "Motion Denied. Threshold showing required under 46.05 not met." In a *per curiam* opinion issued August 19, 2008, the Texas Court of Criminal Appeals dismissed petitioner's appeal from the trial court's denial of petitioner's motion, explaining it lacked both (1) appellate jurisdiction to review same due to the untimeliness of petitioner's motion and (2) direct authority under applicable state law to appoint counsel or experts to assist petitioner in his post-conviction proceeding. *Wood v. State,* AP–75,970, 2008 WL 3855534 (Tex. Crim.App. August 19, 2008).

*Motion for Stay of Execution*

In support of his motion for stay of execution, petitioner argues (1) his school records demonstrate he was diagnosed as exhibiting emotional difficulties as a child, (2) he was determined to be incompetent to stand trial in May, 1997 (but subsequently found competent only a few months later despite receiving no medical treatment or medication during the intervening period), (3) a diagnostician who examined petitioner in connection with petitioner's competency trials concluded petitioner suffered from delusional thought patterns which interfered with petitioner's ability to communicate effectively with his counsel, (4) a mental health evaluation conducted in connection with petitioner's original state habeas corpus proceeding shortly after petitioner's 1998 conviction, concluded, in part, "the client's understanding of the upcoming legal process is somewhat sophisticated.

---

1. In pertinent part, the Texas Code of Criminal Procedure provides the state's highest appellate criminal court may not review a trial court ruling on a motion challenging a convicted capital defendant's competence to be executed if the defendant filed his motion, as did petitioner herein, less than 20 days prior to his scheduled execution date. Tex.Code Crim. Proc. Ann., Article 46.05(1–1): (Vernon Supp. 2007).

However, his ability to appreciate the consequences of those options or behave in a self-protective fashion is profoundly impaired and almost delusional", (5) various prison medical staff have noted instances of paranoid comments made by petitioner during his current incarceration, (6) petitioner has been treated for suicidal ideation and multiple suicide attempts during his current incarceration, and (7) petitioner has made numerous patently delusional comments to his federal habeas counsel, attorney Scott Sullivan, suggesting petitioner possesses a completely unrealistic view of the manner whereby petitioner might one day obtain relief from his death sentence and release from his current custody.

Respondent correctly points out, and petitioner candidly admits, the foregoing arguments do not, standing on their own, satisfy the standard for establishing petitioner is currently so mentally disabled as to be "incompetent to be executed." However, in *Panetti*, the Supreme Court emphasized the Constitution mandates not only a standard of mental competence for a convicted defendant which must be satisfied before an execution may proceed but also guarantees certain minimal due process protections when a defendant sentenced to death makes "a substantial showing of insanity." *Panetti v. Quarterman*, —— U.S. at ——, 127 S.Ct. at 2856. The Supreme Court concluded Panetti had been deprived of the constitutional minimum due process requirements because the state habeas court had failed, among other things, to transcribe its proceedings, furnish Panetti with an evidentiary hearing, or provide Panetti an adequate opportunity to submit expert evidence in response to a report filed by court-appointed experts. *Panetti*, —— U.S. at ——, 127 S.Ct. at 2856–57.

The initial constitutional deficiency with what transpired during petitioner's latest state habeas corpus proceeding is that petitioner was afforded neither court-appointed counsel nor expert assistance to challenge his own competence to be executed. Instead, the State of Texas insisted an arguably insane death row inmate proceeding without the assistance of court-appointed counsel was required to satisfy the threshold requirement of Article 46.05, i.e., make a "substantial showing of incompetency," *before* the inmate was entitled to either the assistance of counsel or the assistance of any mental health expert. With all due respect, a system which requires an insane person to first make "a substantial showing" of his own lack of mental capacity without the assistance of counsel or a mental health expert, in order to obtain such assistance is, by definition, an insane system. Panetti had the assistance of court-appointed counsel. Petitioner was deprived of even this much procedural protection. It is inconsistent with the mandates of both *Panetti* and *Ford* for the State of Texas to deny an indigent death row inmate asserting a claim that he is incompetent to be executed the assistance of counsel until said inmate first satisfies arcane pleadings requirements so intellectually challenging they test the skill of even the most seasoned attorney.

■ Furthermore, the Texas statutory definition of "incompetent to be executed" apparently applied by the state trial court during petitioner's most recent state habeas corpus proceeding suffers from the exact same constitutional defect identified by the Supreme Court when it struck down as too narrow two decades of Fifth Circuit precedent construing the Supreme Court's holding in *Ford*. Under applicable Texas law, a defendant is incompetent to be executed if he does not understand (1) he is to be executed and his execution is imminent and (2) the reason he is being executed.

Tex.Code Crim. Proc. Ann., Article 46.05(h) (Vernon Supp. 2007). The Supreme Court's opinion in *Panetti* makes clear a standard for incompetence in this context which focuses exclusively upon the defendant's awareness of his situation but which ignores the possibility the defendant may suffer from delusional thought processes which interfere with his ability to rationally comprehend the *causal link* between his capital offense and his imminent execution is unconstitutionally narrow. *See Panetti v. Quarterman,* — U.S. at —, 127 S.Ct. at 2861 ("The potential for a prisoner's recognition of the severity of the offense and the objective of community vindication are called in question, however, if the prisoner's mental state is so distorted by a mental illness that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole."). "A prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." *Panetti,* — U.S. at —, 127 S.Ct. at 2862. Petitioner's motion presents non-frivolous arguments suggesting petitioner currently lacks a rational understanding of the connection between his role in his offense and the punishment imposed upon him.

Petitioner's motion for stay, particularly the sections outlining petitioner's allegedly delusional statements to mental health experts near the time of petitioner's trial and his subsequent statements to his state and federal habeas counsel, at least arguably suggest petitioner lacks a rational understanding of the causal link between his role in his criminal offense and the reason he has been sentenced to death. At their core, petitioner's statements to these individuals indicate an inability or unwillingness on petitioner's part to fully comprehend the fact he bears criminal responsibility, and can be punished, for the fatal shooting of Kriss Keeran by his ac-

complice. As explained in *Panetti,* a prisoner's inability to make the psychic link between his offense and the punishment to be imposed upon him may potentially render the prisoner incompetent to be executed for Eighth Amendment purposes. *Panetti,* — U.S. at —, 127 S.Ct. at 2862 ("Gross delusions stemming from a severe mental disorder may put an awareness of a link between a crime and its punishment in a context so far removed from reality that the punishment can serve no proper purpose."). Mere confusion over the complexities of the Texas law of parties does not a delusion make. However, petitioner's federal habeas counsel suggests petitioner has made numerous statements demonstrating a complete and fundamental lack of comprehension as to how capital punishment can be imposed upon petitioner for a crime (the fatal shooting of Keeran) another individual committed.

Admittedly, the evidence of petitioner's alleged incompetence now before this Court is far from compelling. Petitioner has never been definitively diagnosed with any mental illness. The findings of various educational experts that petitioner displayed symptoms, at age 12 and 15, equivalent to those displayed by students currently labeled with Attention Deficit Disorder ("ADD") and Attention Deficit Hyperactivity Disorder ("ADHD") do not even begin to approach the standard for establishing incompetence to be executed. Likewise, neither petitioner's post-conviction suicidal ideation nor even his actual suicide attempts satisfy the standard.

Nonetheless, there are facts properly before this Court which lend support to the conclusion petitioner has made a "substantial threshold showing of insanity." Petitioner's delusional thought processes convinced at least one jury he was incompetent to stand trial in May, 1997. Re-

ports of various mental health experts who interviewed petitioner during the time frame 1997–99 suggest (1) petitioner's intellectual functioning remained in the low average range before and after his incarceration began, (2) petitioner's memory remains in tact, but (3) petitioner's narcissistic tendencies and almost delusional belief in the inevitability of his ultimate vindication have grown more prominent since his arrest. Moreover, as this Court explained in great detail in its opinion denying petitioner federal habeas relief, petitioner exhibited a bizarre, seemingly paranoid, and clearly suicidal ideation during his capital trial. Thus, this Court's conclusion petitioner has satisfied the requirement necessary to entitle him to a stay of execution in this cause is not based solely upon the limited facts alleged in petitioner's motions filed August 19, 2008 but also upon this Court's independent review of the records of petitioner's state trial, direct appeal, and state habeas corpus proceedings.

This is not to suggest a capital defendant may obtain a stay of execution, or even ultimately avoid capital punishment, merely by displaying an obstinate refusal to accept the State's proffered rationale for his punishment:

> And we must not ignore the concern that some prisoners, whose cases are not implicated by this decision, will fail to understand why they are to be punished on account of reasons other than those stemming from a severe mental illness. The mental state requisite for competence to suffer capital punishment neither presumes nor requires a person who would be considered "normal," or even "rational," in a layperson's understanding of those terms. Someone who is condemned to death for an atrocious murder may be so callous as to be unre-

pentant; so self-centered and devoid of compassion as to lack all sense of guilt; so adept in transferring blame to others as to be considered, at least in the colloquial sense, to be out of touch with reality. These states of mind, even if extreme compared to the criminal population at large, are not what petitioner contends lie at the threshold of a competence inquiry. The beginning of doubt about competence in a case like petitioner's is not a misanthropic personality or an amoral character. It is a psychotic disorder.

*Panetti,* —— U.S. at ——, 127 S.Ct. at 2862,

The unverified copies of petitioner's school records attached to his motion for stay of execution amply illustrate petitioner was identified while a child as possessing most of the characteristics of an antisocial personality. Thus, there is evidence before this Court suggesting petitioner's alleged refusal to comprehend, or perhaps possibly to admit, the connection between his role in the fatal shooting of Kriss Keeran and the death sentence imposed upon him may be more demonstrative of petitioner's antisocial personality than of a true mental illness. However, where petitioner was deprived of not only the assistance of a mental health professional to develop his *Panetti/Ford* claim in state court but also the assistance of court-appointed counsel, any adjudication of the merits of the petitioner's incompetence claim at this juncture is premature.

In view of petitioner's well-documented record of suicidal ideation and behavior during his trial,[2] this Court believes the minimal evidence of petitioner's delusional thought processes currently before this Court and the refusal of the State of Texas

---

2. *See Wood v. Dretke,* 386 F.Supp.2d at 828–33 (quoting extensively from the bizarre exchanges between petitioner, his trial counsel, and the state trial judge during petitioner's trial).

to afford petitioner even the most minimal of procedural due process protection, i.e., the appointment of counsel and the assistance of a qualified mental health expert, during petitioner's most recent state habeas corpus proceeding collectively warrant issuance of a stay of execution for the purpose of permitting petitioner to further develop his *Panetti/Ford* claim with the assistance of qualified counsel and a qualified mental health expert.

*Motion Regarding Appointment of Counsel*

■ For the reasons discussed at length by the Supreme Court in *Panetti,* petitioner herein is entitled to the assistance of counsel to develop and present evidence supporting petitioner's *Panetti/Ford* claim herein. *Panetti,* ⸺ U.S. at ⸺, 127 S.Ct. at 2856 (holding the basic requirements of due process applicable to a hearing on a claim of incompetence to be executed include, at a minimum, an opportunity to submit evidence and argument *from the prisoner's counsel* and expert psychiatric evidence that may differ from the State's own psychiatric examination). Thus, fundamental due process requires, at a minimum, that an indigent defendant asserting a non-frivolous *Panetti/Ford* claim be assisted by counsel in any hearing before the Court.

Furthermore, the Supreme Court held in its opinion in *McFarland v. Scott,* 512 U.S. 849, 855–58, 114 S.Ct. 2568, 2572–73, 129 L.Ed.2d 666 (1994), a state prisoner facing a death sentence has a qualified statutory right pursuant to former Title 21 U.S.C. Section 848(q)(4)(B) to the appointment of counsel in connection with a federal habeas corpus proceeding challenging his criminal conviction and death sentence. *Sterling v. Scott,* 57 F.3d 451, 454 (5th Cir.1995), *cert. denied,* 516 U.S. 1050, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996). In March, 2006, Congress repealed Title 21 U.S.C. Section 848(q) and simultaneously re-enacted same in substantially similar form as Title 18 U.S.C. Section 3599. The Court will grant petitioner's request for appointment of counsel in conformity with Section 3599 and the Supreme Court's holding in *McFarland.*

The Court finds attorney J. Scott Sullivan, long a member of the bar of this Court, whose mailing address is 7800 IH 10 West, Suite 519, San Antonio, Texas 78230, and whose telephone number is (210) 227–6000, qualifies for appointment as lead counsel for petitioner herein pursuant to Section 3599(b). Said counsel has actively represented numerous death row inmates in Section 2254 proceedings before this Court and the Fifth Circuit in recent years. Said counsel also previously represented petitioner in this cause. This Court previously granted attorney Jared Tyler permission to appear *pro hac vice* as co-counsel for petitioner herein.

*Motions Regarding Expert Assistance*

■ Petitioner requests appointment of a mental health expert to assist him in developing and presenting his *Panetti/Ford* claim herein. This Court finds petitioner is entitled to such assistance because the state court denied him any opportunity whatsoever to present expert mental health evidence to that court when it denied petitioner's motion requesting appointment of counsel. Petitioner's most recent state habeas proceeding was so lacking in fundamental due process protections it is incumbent upon this Court to afford petitioner a fair hearing in accord with fundamental fairness in which petitioner has a meaningful opportunity to be heard on the merits of his *Panetti/Ford* claim. *Panetti,* ⸺ U.S. at ⸺, 127 S.Ct. at 2856. Petitioner is entitled to the assistance of a mental health expert to help petitioner and his counsel develop evidence supporting petitioner's incompetence claim.

Any request for funding for expert assistance from this Court pursuant to Section 3599(f) which exceeds the current limit mandated by supervisory judicial officers for investigative expenses in capital habeas proceedings *must be accompanied by a completed CJA Form 31 filed on petitioner's behalf.* The current limit for expert assistance established by the governing judicial officers in capital cases is $7,500. Petitioner has requested the sum of $9,900 to compensate his designated mental health expert for the work said expert will perform in this cause. Nonetheless, petitioner has wholly failed to support his request with the proper documentation required under CJA Guidelines. Accordingly, petitioner's request for expert mental health assistance will be granted in part to the extent permitted by CJA Guidelines. In the event petitioner requires additional expert assistance not covered by the amount of funding authorized in this Order, petitioner must file a separate motion and support same with the necessary documentation.

As correctly pointed out by respondent, applicable federal law clearly provides a federal habeas corpus petitioner has *no* right to proceed *ex parte* when requesting expert assistance unless the petitioner makes a "proper showing" concerning "the need for confidentiality." 18 U.S.C. § 3599(f).

Petitioner was convicted more than decade ago. His conviction and sentence have withstood scrutiny from both state and federal courts during the ensuing decade-plus. There is no genuine issue of material fact properly before this Court at this juncture regarding the circumstances of petitioner's offense, petitioner's criminal history, petitioner's background or social history, or petitioner's medical or mental health history. Petitioner has been incarcerated in the custody of the Texas Department of Criminal Justice for over a

decade as well. His medical and mental health records during his current incarceration are equally available to both parties. Any documentation regarding petitioner's mental health relevant to the issue of petitioner's *Panetti/Ford* claim is ultimately going to be presented to this Court in an open, public, hearing. By seeking relief under Article 46.05 from the state courts, petitioner statutorily waived any claim of privilege with regard to his medical or mental health records. Article 46.05(j), Tex.Code Crim. Proc. Ann. (Vernon Supp. 2007). Petitioner attached numerous documents containing otherwise privileged information to the pleadings and motions he filed unsealed in this Court.

Nowhere in any of his motions or pleadings currently before this Court does petitioner imply, much less identify, any reason for confidentiality exists with regard to the information contained in petitioner's sealed motion requesting the expert assistance of Dr. Mark Cunningham, a mental health expert with whom both the respondent's counsel and this Court are long familiar. There is nothing sacrosanct about either Dr. Cunningham's current fee schedule or the estimated number of hours petitioner and Dr. Cunningham currently believe they will need to adequately develop petitioner's *Panetti/Ford* claim.

Petitioner's motion for expert assistance will be granted. Petitioner will be granted a reasonable time within which to investigate and develop evidence supporting his *Panetti/Ford* claim. However, petitioner's motion requesting the right to proceed *ex parte* in connection with his retention of Dr. Cunningham's services will be denied.

*Conclusion*

Succinctly, the legal basis for this Court's decision herein rests squarely on the state trial court's refusal to afford the allegedly insane petitioner the most fundamental of the due process procedural pro-

tections mandated by the Supreme Court's holding in *Panetti,* i.e., the state trial court's denial of petitioner's request for legal representation. Had the state trial court granted that request, along with the other procedural rights recognized in *Panetti,* this Court's eleventh-hour intervention in petitioner's execution might have been unnecessary.

Accordingly, it is hereby **ORDERED** that:

1. Petitioner's motion requesting appointment of counsel docket entry no. 35, is **GRANTED** as follows: in accordance with Title 19 U.S.C. Section 3599, attorney J. Scott Sullivan, whose mailing address is Suite 519, 7800 IH 10 West, San Antonio, Texas 78230, and whose telephone number is (210) 227–6000, is appointed lead counsel of record for petitioner herein; attorney Jared Tyler, whose mailing address is Suite 1150, 412 Main Street, Houston, Texas, 77002, and whose telephone number is (713) 222–7788 is appointed co-counsel of record for petitioner herein. The Clerk shall send to each of said counsel a copy of this Order and all forms and vouchers necessary to permit said counsel to comply with all requirements for obtaining reimbursement for expenses and payment for attorneys fees for services rendered in connection with this cause.

2. All relief requested in petitioner's motion styled "Petitioner's Statement of the Need for Confidentiality and Motion for Leave to File Detailed *Ex Parte* Applications for reasonably Necessary Services under Seal," docket entry no. 36, is **DENIED;** the Clerk shall immediately unseal docket entry no. 39.

3. Petitioner's motion for stay of execution, docket entry no. 37, is **GRANTED;** execution of petitioner's death sentence is hereby **STAYED** pending further Order of this Court.

4. Petitioner's motion requesting authorization of funds to obtain the services of a mental health expert, docket entry no. 39, is **GRANTED** in part consistent with the following terms and provisions of this Order.

5. Petitioner is authorized to retain the services of Dr. Mark Cunningham and to incur expenses investigating the subjects identified in petitioner's motion requesting the assistance of a mental health expert up to the sum of $7,000. In the event petitioner wishes to incur additional investigative expenses beyond this amount, petitioner shall file a separate motion and accompany same with all the necessary CJA forms and other documentation identified in this Order.

6. *On or before November 1, 2008,* petitioner shall file an *amended* federal habeas corpus petition and set forth therein the factual and legal bases for his *Panetti/Ford* claim. Petitioner shall attach to his *amended* petition a report prepared by Dr. Cunningham addressing specifically his findings and conclusions regarding petitioner's competence to be executed.

7. Respondent shall file his answer to petitioner's *amended* federal habeas corpus petition or other responsive pleading on or before sixty (60) days after receipt of a copy of petitioner's *amended* federal habeas petition. Respondent's answer or other responsive pleading shall conform to the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and Rule 12 of the Federal Rules of Civil Procedure.

8. Respondent shall serve petitioner's counsel of record with a copy of said answer or other responsive pleading in accordance with the provisions of Rule 5(b), Federal Rules of Civil Procedure.

9. *Petitioner's Reply* On or before twenty (20) days after the date respondent serves petitioner's counsel of record with a copy of respondent's answer or other re-

sponsive pleading, petitioner shall file with the Clerk of this Court *and* serve on respondent's counsel of record any reply he wishes to make to respondent's answer or other responsive pleading.

10. *On or before January 5, 2009*, counsel for both parties shall advise the Court in writing regarding their respective availability during the months of February and March, 2009 to attend an evidentiary hearing in this cause and their estimates regarding the duration of such hearing. In lieu of separate advisories, counsel may file a joint advisory addressing these subjects.

11. Any party seeking an extension on any of the foregoing deadlines shall file a written motion requesting such extension *prior* to the expiration of the deadline in question and shall set forth in such motion a detailed description of the reasons why that party, despite the exercise of due diligence, will be unable to comply with the applicable deadline.

12. Once the Court has received all operative pleadings and reviewed counsels' advisories, the Court will set an evidentiary hearing in this cause on petitioner's *Panetti/Ford* claim.