

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. AP-76,374, AP-76,376, & AP-76,381

### JONATHAN MARCUS GREEN, Appellant

### v.

### THE STATE OF TEXAS

### ON APPEAL
### FROM THE 221st DISTRICT COURT
### MONTGOMERY COUNTY

*Womack, J., delivered the opinion of the Court, in which Keller, P.J., and Meyers, Keasler, Hervey, and Cochran, JJ., joined. Price, J., filed a concurring opinion in which Johnson and Alcala, JJ., joined.*

The appellant has been convicted of capital murder and sentenced to death. Shortly before the scheduled execution of the sentence on June 30, 2010, he applied for a writ of habeas corpus on the ground that he was incompetent to be executed. After the trial court held a hearing and found him competent, we stayed his execution to review the trial court's determination.

Having reviewed the three matters the appellant brought to us, we shall lift the stay of

execution. First, we hold that Article 46.05 of the Code of Criminal Procedure provides an adequate remedy for claims of incompetence to be executed, which leads us to dismiss the appellant's application for a writ of habeas corpus (AP-76,376). Second, we hold that the district court applied the correct legal standard and was within its discretion to find the appellant competent; therefore, we affirm the court in AP-76,374. Finally, we dismiss the appellant's appeal from the denial of his motion to recuse the trial judge (AP-76,381) because it is not properly before this court.

## I. BACKGROUND

The appellant was convicted of capital murder[1] and sentenced to death in 2002. The facts of the offense are summarized in our opinion on his direct appeal.[2] After the appellant exhausted all state and federal appeals and writs of habeas corpus, his execution was scheduled for June 30, 2010. On June 23, the appellant filed his first subsequent application for a writ of habeas corpus, alleging that he was incompetent to be executed and requesting an Article 46.05 hearing to determine his competency.[3]

On June 28, the District Court held a competency hearing. The appellant first called Dr. Diane Mosnik, an assistant professor of psychiatry and neurology, who testified that, based on her examination of the appellant, she believed he was incompetent to be executed. Acknowledging the standard for competence established in the United States Supreme Court's decision in

---

[1] *See* TEX. PENAL CODE § 19.03(a)(2).

[2] *Green v. State*, 2004 WL 3094650 (Tex. Cr. App., No. AP-74,398, Dec. 1, 2004) (not designated for publication).

[3] See TEX. CODE CRIM. PROC. art. 46.05 (forbidding the execution of an incompetent defendant, defining incompetency to be executed, and providing the procedures for determining competency).

*Panetti v. Quarterman*,[4] Dr. Mosnik testified that she believed the appellant was "aware that the State has scheduled him to be executed, but he is not aware … that he is responsible for a crime for which he's being executed." On cross-examination, the State asked Dr. Mosnik about her credentials. She testified that she had testified as a mental-health expert in criminal cases "[a]bout five times." Each time she had been hired by the defense, and each time she had testified that the defendant was incompetent.

The appellant then testified. He said that various "personalities or things" and "demons" lived inside of him and controlled some of his actions. He stated his belief that he was "locked up for no reason, accused of killing someone that … [he] never killed." He further testified that he did not receive a fair trial, referencing by name the trial judge, his trial attorney, and witnesses. On cross-examination, the appellant testified that he understood that he had an execution date set. He explained his sentence by saying the jury "assumed" that execution was the appropriate sentence in his case.

The State's only witness was a psychiatrist, Dr. Mark Moeller. He told the court that he had testified as a mental-health expert before, and he had found some defendants competent to be executed and others to be incompetent. He said that, based on his two meetings with the appellant, he disagreed with Dr. Mosnik's conclusion. Dr. Moeller said that the appellant exhibited signs of "symptom magnification": the intentional exaggeration of symptoms in an effort to achieve secondary gain. Dr. Moeller found that the appellant was competent to be executed based on *Panetti*'s "requirements." Specifically, it was his professional opinion that the appellant had the capacity to understand rationally the connection between his conviction and his

---

[4] 551 U.S. 930 (2007).

death sentence.

The trial court concluded that the appellant was sufficiently competent:

> I'm going to find that, based on all the evidence, that you appear to understand the reason for imminent execution; but for the record, I'm going to state that the most compelling evidence of all was from your own expert … which shows that you know you are to be executed by the State, you know you are convicted of killing the victim, Christina Neal, you know the execution date, and then you proclaimed your innocence which shows a rational understanding of your imminent date and you know the charges that were against you.
>
> You knew the names of appellate counsel, the name of your trial counsel, name of your current attorney, you knew your first, second, and third attorneys on this case. You knew that you had the right to have trial counsel and appellate counsel, and I further find that you appreciated the adversarial nature of the trial and proceedings. Therefore, I find that you are not incompetent and I will not grant a stay of execution and that's my ruling ….
>
> Let me state on the record that I talked about the three different types of subsequent writs just to show that I had read the statute, that I had an understanding of the statute, and that I knew that we were here on the incompetence claim. I did listen to both sides. I did follow the *Panetti* standard … and I did also apply the *Ford* standard in this case. And after applying all of those standards, it's my ruling that I am not granting the stay in this case.

The appellant appealed the trial court's determination, which was forwarded to this court for our review pursuant to Article 46.05.

The appellant also applied for a writ of habeas corpus challenging the trial court's ruling, accompanied by a brief arguing that competency-to-be-executed claims are cognizable on habeas corpus. In light of questions about the standard used by the trial court in concluding that the appellant was competent, we stayed the appellant's execution and ordered the trial judge to file with us a written clarification of the standard she used.[5]

---

[5] *Green v. State*, No. AP-76,374, 2010 Tex. Crim. App. Unpub. LEXIS 407 (Tex. Cr. App. Jun. 30, 2010) (not designated for publication). We received the trial judge's clarification on July 14.

## II. COGNIZABLE ON HABEAS

We first address the appellant's contention that competency-to-be-executed claims are cognizable on a writ of habeas corpus.

Article 46.05 of the Code of Criminal Procedure states, "A person who is incompetent to be executed may not be executed."[6] The article defines incompetency and provides procedures for a competency-to-be-executed hearing in the trial court[7] and for review in this court.[8]

While recognizing the general rule that the writ of habeas corpus should not be used to litigate matters that should have been raised on direct appeal,[9] the appellant argues that competency-to-be-executed claims should be excepted from this rule. He groups his arguments under two headings. First, he argues that competency-to-be-executed claims are cognizable based on the plain language of Article 11.071. Second, he argues that Article 46.05 denies procedural due process, and therefore Article 46.05's provision regarding our review of competency determinations is not instructive.

In response, the State argues that the legislative history of Article 46.05 makes clear that is it the "exclusive avenue" by which to review a trial court's determination of a defendant's competency to be executed.

---

[6] TEX. CODE CRIM. PROC. art. 46.05(a).

[7] *Id.*

[8] *See id.*, at (*l*) ("Following the trial court's determination under Subsection (k) and on motion of a party, the clerk shall send immediately to the court of criminal appeals in accordance with Section 8(d), Article 11.071, the appropriate documents for that court's review and entry of a judgment of whether to adopt the trial court's order, findings, or recommendations issued under Subsection (g) or (k). The court of criminal appeals also shall determine whether any existing execution date should be withdrawn and a stay of execution issued while that court is conducting its review or, if a stay is not issued during the review, after entry of its judgment.").

[9] *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Cr. App.1991); *see also Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Cr. App.1978) (habeas corpus does not lie as a substitute for an appeal).

## A. Plain Language of Article 11.071

In arguing that the plain language of Article 11.071 makes competency-to-be-executed claims cognizable on a writ of habeas corpus, the appellant first cites to our statement in *Ex parte Smith* that "Article 11.071 now contains the exclusive procedures for the exercise of this Court's original habeas corpus jurisdiction in death penalty cases."[10] Article 11.071 states:

> Notwithstanding any other provision of this chapter, this article establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death.[11]

The appellant then cites our holding in *Ex parte Alba* that Article 11.071 was *not* the proper vehicle for raising a claim where "the relief sought would not foreclose execution, and the claim does not challenge the sentence of death or seek to establish unlawfulness that would render the conviction or sentence invalid."[12] He argues that a finding of incompetency would provide "immediate relief," thus making an incompetency claim cognizable on a writ of habeas corpus.

The appellant seems to find in Article 11.071 a statement of which claims related to the death penalty are cognizable on habeas corpus. We do not. By our reading, Article 11.071 – and, by extension, our opinion in *Smith* – merely states the procedures that must be followed for habeas corpus claims by an applicant who seeks relief from a judgment imposing a penalty of death. It says nothing about the substance of claims that are cognizable on a writ of habeas corpus.

We do not read *Alba* as supporting a determination that competency-to-be-executed

---

[10] 977 S.W.2d 610, 611 (Tex. Cr. App. 1998).

[11] TEX. CODE CRIM. PROC. art. 11.071, §1.

[12] 256 S.W.3d 682, 685 (Tex. Cr. App. 2008).

claims are cognizable under Article 11.071. A finding of incompetency results in only a stay during the defendant's incompetence;[13] it would not render the appellant's sentence invalid.

Neither the plain language of Article 11.071 nor our decisions in *Smith* and *Alba* establish competency-to-be-executed claims as cognizable on a writ of habeas corpus. Because Article 46.05 provides the appellant with all of the process that is due to him, we see no reason to depart from the well-established principle that a writ of habeas corpus is not a substitute for a direct appeal.

**B. Article 46.05's Constitutionality**

The appellant next argues that Article 46.05 denies due process. He relies on the Supreme Court's decision in *Panetti v. Quarterman*,[14] arguing that the Court held in that case that Article 46.05's procedures were "constitutionally inadequate." Specifically, the appellant finds fault with Article 46.05's failure to "require that either of the appointed mental-health experts serve as a defense expert," as well as its lack of a "guarantee that the inmate will have access to a competent defense expert who will help him or her prepare and present a defense."

We do not find any constitutional infirmities lurking within Article 46.05. Contrary to the appellant's assertions, the Supreme Court in *Panetti* did not determine that Article 46.05 offered constitutionally inadequate protection to defendants asserting their incompetency.[15] Rather, the *Panetti* court decided only that the trial judge in that specific case had provided inadequate

---

[13] *See* TEX. CODE CRIM. PROC. art. 46.05(m) ("If a stay of execution is issued by the court of criminal appeals, the trial court periodically shall order that the defendant be reexamined by mental health experts to determine whether the defendant is no longer incompetent to be executed.").

[14] 551 U.S. 930 (2007).

[15] *See Panetti*, 551 U.S., at 948-954.

protection to the defendant.[16] Indeed, the Supreme Court noted that there was a strong argument that the trial judge had violated Article 46.05 as well.[17]

The appellant cites *Wood v. Quarterman*,[18] in which a federal district court criticized Article 46.05 for failing to provide an inmate with counsel or expert assistance. The obvious distinction between that case and the one now before us is that this applicant was provided with counsel and expert assistance.

The relevant portion of *Panetti* mandates that only after a defendant has made the requisite threshold showing of incompetence must he be provided with: 1) a constitutionally adequate opportunity to be heard,[19] and 2) an "adequate opportunity to submit expert evidence in response."[20] Article 46.05 does not infringe upon either of these rights.

### C. Conclusion

Article 46.05 of the Code of Criminal Procedure provides for the direct review of a trial court's determination of a defendant's competency to be executed. The writ of habeas corpus should not be used to litigate matters that should have been raised on direct appeal, and we do not find any reason to except competency-to-be-executed claims from this well-established principle.

---

[16] *Id*., at 950.

[17] *Ibid*.

[18] 572 F.Supp.2d 814, 817 (W.D. Tex. 2008).

[19] *Panetti*, 551 U.S., at 949 (citing *Ford v. Wainwright*, 477 U.S. 399, 426 (1986)).

[20] *Id*., at 951.

## III. DIRECT APPEAL OF COMPETENCY DETERMINATION

Before deciding the merits of the appellant's direct appeal from the trial court's Article 46.05 determination, we must first determine which appellate standard we should use, as well as whether the standard to be used by the trial court has changed as a result of recent Supreme Court decisions.

### A. Applicable Appellate Standard

On motion from a party, Article 46.05 requires that a trial court's determination of a defendant's competency to be executed be sent to this Court for review.[21] It does not, however, instruct us on what standard to use when reviewing the trial court's determination, nor have we addressed the issue since the article's enactment.

In our opinion in *Guzman v. State*, we explained the standards of review used by our court:

> As a general rule, the appellate courts, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.
>
> The appellate courts should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.
>
> The appellate courts may review de novo "mixed questions of law and fact" not falling within this category …. An abuse of discretion standard does not necessarily apply to "application of law to fact questions" whose resolution does not turn on an evaluation of credibility and demeanor.[22]

---

[21] *See* TEX. CODE CRIM. PROC. art. 46.05(*l*) ("Following the trial court's determination under Subsection (k) and on motion of a party, the clerk shall send immediately to the court of criminal appeals in accordance with Section 8(d), Article 11.071, the appropriate documents for that court's review and entry of a judgment of whether to adopt the trial court's order, findings, or recommendations issued under Subsection (g) or (k). The court of criminal appeals also shall determine whether any existing execution date should be withdrawn and a stay of execution issued while that court is conducting its review or, if a stay is not issued during the review, after entry of its judgment.")

[22] *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (citations omitted) (paragraph breaks inserted).

We believe that a trial court's competency determination is, if not wholly a factual determination, at least a mixed question of law and fact based on credibility and demeanor. This conclusion would necessitate a highly deferential standard of review. Corroborating this conclusion are the opinions of other appellate courts — state[23] and federal[24] — that have adopted an abuse-of-discretion standard in reviewing competency-to-be-executed findings.

In accordance with the opinions of the federal courts, other state courts, and our own guidelines as to standards of review, we believe that the appropriate standard to review a trial court's finding of a defendant's competency to be executed is whether the trial court abused its discretion. We shall reverse the judgment only if it is outside the zone of reasonable disagreement.[25] We shall sustain the trial court's ruling if it is supported by the record and is correct on any theory of law applicable to the case.[26]

### B. Trial Court Standard

In *Ford v. Wainwright*, the United States Supreme Court drew on long-established principles of the common law to hold that the Eighth Amendment prohibits execution of the

---

[23] *See, e.g., State v. Irick*, 320 S.W.3d 284, 292 (Tenn. 2010)("[T]he trial court's finding on the issue of competency is reviewed as a question of fact and presumed correct unless the evidence in the record preponderates against the finding."); *Commonwealth v. Banks*, 29 A.3d 1129 (Pa. 2011) ("this Court reviews the trial court's findings [as to whether the defendant is competent to be executed] for an abuse of discretion"); *State v. Brooks*, 2011-Ohio-5877, at ¶15 (Ohio Ct. App. 2011) ("The fundamental question of whether the trial court properly denied Brooks's petition for postconviction relief by finding him competent to be executed is reviewed under an abuse of discretion standard.") .

[24] *Bedford v. Bobby*, 645 F.3d 372, 375 (6th Cir. 2011) (citing *Workman v. Bredesen*, 486 F.3d 896, 904-05 (6th Cir. 2007)); *Ferguson v. Sec'y for the Dep't of Corr.*, 580 F.3d 1183, 1221 (11th Cir. Fla. 2009) (citing *Turner v. Crosby*, 339 F.3d 1247, 1273 (11th Cir. 2003)).

[25] *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Cr. App. 2006) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Cr. App. 1990)).

[26] *Id*.

insane.[27] In *Ford*, Justice Powell stated in a concurrence to the four-justice plurality opinion that prisoners are insane for the purposes of execution if they are "unaware of the punishment they are about to suffer and why they are to suffer it."[28] Justice Powell also opined that a state may, consistent with due process, presume a prisoner who was competent to stand trial is sane at the time of execution, and "may require a substantial threshold showing of insanity merely to trigger the hearing process."[29] Because there was no majority opinion, Justice Powell's concurrence became the controlling opinion in *Ford* and "constitutes 'clearly established' law."[30]

Although *Ford* identified some of the components necessary to demonstrate a constitutionally minimum definition of insanity, the application of *Ford* presents challenges because the Court neither defined insanity nor mandated procedures for courts to follow in determining whether the defendant is insane. Instead, the Court left those tasks to the states.

The Court's *Ford* opinion was largely codified in Article 46.05 of the Texas Code of Criminal Procedure, which was enacted in 1999. It provides, in pertinent part:

> (a) A person who is incompetent to be executed may not be executed.
> ….
> (h) A defendant is incompetent to be executed if the defendant does not understand:
> (1) that he or she is to be executed and that the execution is imminent; and
> (2) the reason he or she is being executed.[31]

Additionally, article 46.05 makes clear that the petitioner bears the burden of proving, by a

---

[27] 477 U.S. 399, 406-10 (1986).

[28] *Id.,* at 422.

[29] *Id*., at 426.

[30] *Panetti*, 551 U.S., at 949.

[31] *See* TEX. CODE CRIM. PROC. art. 46.05.

preponderance of the evidence, that he is incompetent.[32]

In 2007, the United States Supreme Court revisited the issue of competency to be executed in *Panetti v. Quarterman*, in which it addressed *Ford*'s competency-for-execution and "substantial threshold showing" standards.[33] In *Panetti*, the federal district court denied the petitioner's incompetency claim, saying that "the Fifth Circuit test for competency to be executed requires the petitioner know no more than the fact of his impending execution and the factual predicate for the execution."[34] The Court of Appeals affirmed.[35] The Supreme Court, however, held that the lower courts "unreasonably applied federal law clearly established by *Ford*," stating that "the Court of Appeals' standard [was] too restrictive to afford a prisoner the protections granted by the Eighth Amendment."[36] The Court concluded:

> A prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it. *Ford* does not foreclose inquiry into the latter. . . . It is therefore error to derive from *Ford*, and the substantive standard for incompetency its opinions broadly identify, a strict test for competency that treats delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted."[37]

No relevant changes to Article 46.05 were made after *Panetti*.[38]

In following *Panetti*, courts have disagreed as to whether it imposed an additional

---

[32] *See* TEX. CODE CRIM. PROC. art. 46.05(k).

[33] 551 U.S. 930, at 948-62.

[34] *Id*., at 941-42.

[35] *Panetti v. Dretke*, 448 F.3d 815 (5th Cir. 2006).

[36] *Panetti v. Quartermann*, 551 U.S., at 956-57.

[37] *Id*., at 959-60 (internal citations omitted).

[38] Article 46.05 was amended in 2007 (see Acts 2007, 80th Leg., R.S., ch. 677) but the amendments have no relation to *Panetti*.

requirement on courts in determining competency,[39] or whether it merely reiterated the established requirements of *Ford*.[40] The latter is the majority view, and we are inclined to agree. Our reading of *Panetti* does not find a mandate regarding how to weigh any particular evidence; instead, we read *Panetti* as instructing that evidence of delusions may not, categorically, be deemed irrelevant. Therefore, we hold that *Panetti* merely clarifies the *Ford* standard for determining whether an inmate is competent to be executed. Accordingly, the Code of Criminal Procedure's Article 46.05 standard for reviewing the competency of inmates to be executed, which is a codification of *Ford*, remains constitutionally adequate in the wake of *Panetti*.

## C. Application

Having determined the appropriate appellate and trial court standards, we now must decide whether the trial court used the correct standard and whether the trial court abused its discretion in ruling that the appellant was competent to stand trial.

### 1. Trial Court Standard

In the instant case, the trial judge, after announcing that she had considered the standards of *Ford, Panetti*, and Article 46.05, declared that she found the appellant to be competent under the Article 46.05 standard. She found that the appellant "appears to understand the reason for imminent execution," and that the appellant possessed a "rational understanding of [his]

---

[39] *See Overstreet v. State*, 877 N.E.2d 144, 172 (Ind. 2007) ("[In *Panetti*] the Supreme Court again declined to attempt to set down a rule governing all competency determinations. However, the Court departed from the Justice Powell formulation and *expanded* upon the Eighth Amendment's reach for persons with mental illness.") (internal citations omitted) (emphasis added)

[40] *See, e.g., Thompson v. Bell*, 580 F.3d 423, 434 (6th Cir. 2009) ("The *Panetti* Court clarified *Ford*'s competency-for-execution and 'substantial threshold showing' standards"); *State v. Motts*, 391 S.C. 635, 651 (S.C. 2011) ("In [*Panetti*], the United States Supreme Court reiterated the holding in *Ford* and explained …"); *State v. Irick*, 320 S.W.3d 284, 293-294 (Tenn. 2010) (finding that *Panetti* "explained" and "clarif[ied]" *Ford*);

imminent date [of execution]."[41] This was the Article 46.05 standard which meets the constitutional standards determined by the Supreme Court's opinions in *Ford* and *Panetti*. The trial court here used the correct standard.

## 2. Abuse of Discretion

We next look to the record to determine whether the trial court abused its discretion in applying Article 46.05.

At the competency hearing, the defense presented two witnesses: a psychologist and the appellant. The psychiatrist testified that the appellant was aware he was scheduled to be executed, but not because he had committed a crime. She therefore concluded that he was incompetent to be executed. The appellant testified as to various delusions he suffered, but he also testified as to his innocence of the crime for which he was convicted, as well as various injustices that he suffered at his trial.

The State's only witness, a psychiatrist, testified that he believed the appellant was magnifying his symptoms in order to achieve secondary gain. He testified that the appellant was competent to be executed under *Panetti*, because the appellant "clearly understands what happened in 2002, that he was convicted. He knows why he's on death row."

The record contains evidence that would support a finding of competency *or* incompetency. According to the trial court, though, some of the strongest evidence to support a finding of competency came from the appellant's expert herself. Additionally, the appellant's testimony, in which he gave his opinion of his trial and proclaimed his innocence of the murder of which he

---

[41] *See* TEX. CODE CRIM. PROC. Art. 46.05(h) ("A defendant is incompetent to be executed if the defendant does not understand: 1) that he or she is to be executed and that the execution is imminent; and 2) the reason he or she is being executed.").

was convicted, indicated an understanding of the reason he is to be executed. There is sufficient evidence here to support the trial court's ruling; we cannot find that its determination was outside the zone of reasonable disagreement. We therefore overrule the appellant's claim of error, and hold that trial court did not abuse its discretion in finding him competent to be executed.

## IV. RECUSAL

Finally, we address the presiding judge's decision to deny the appellant's motion to recuse the trial judge.

At the conclusion of the appellant's competency hearing on June 28, 2010, the trial judge determined that the appellant was competent to be executed. The State then prepared and delivered to the trial judge proposed findings of facts and conclusions of law, which the trial judge adopted. On July 2, the appellant, feeling that this "*ex parte* contact between the State and the [trial judge]" was inappropriate, filed a motion to recuse the trial judge. On July 6, the next business day, the trial judge referred the recusal motion to the regional presiding judge, who scheduled a hearing on the recusal motion for July 12. The trial judge did not attend the hearing. The appellant requested a continuance so that the trial judge could attend and give testimony, but the regional presiding judge denied the appellant's request, reasoning that the trial judge's testimony was not required because prosecutors were available to testify to their exchange with the trial judge. Upon the conclusion of the hearing, the regional presiding judge declined to recuse the trial judge.

On July 19, nearly three weeks after the record of the Article 46.05 hearing was forwarded to this court, and four days after the appellant and the State filed briefs in this court regarding the Article 46.05 hearing, the appellant filed with the district clerk a notice of appeal.

The appellant styled the notice "*In re Michalk,*" using the last name of the trial judge. The appellant labeled the notice with the trial-court cause number that was assigned to the Article 46.05 hearing, and stated in the notice, "The final judgment or order to which [the presiding judge's] ruling is related is the June 28, 2010, order of [the trial judge] denying [the appellant's] motion under Article 46.05 … and the July 14, 2010, clarification of that order filed by [the trial judge]."

There are multiple reasons why we do not believe this motion is properly before us. First, and most fundamentally, we do not believe that, given the peculiar posture of an Article 46.05 hearing and appeal, a motion to recuse the trial judge made while the proceedings are on appeal can influence that appeal.

Recusal is governed by Rule of Civil Procedure 18a.[42] Under that rule, if a recusal motion is granted (either by the trial judge herself, or by the regional presiding judge who conducts the recusal hearing), the result is that the case is transferred to another court or judge.[43] In an Article 46.05 proceeding, however, once the case is forwarded to this Court on appeal, the trial court's powers in the matter are limited to actions based on our judgment.[44] The terms of the statute give the trial court no continuing authority over the merits of the proceeding. Even if the regional presiding judge had determined that the trial judge should have been recused, that determination

---

[42] *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Cr. App. 1993) (holding that TEX. R. CIV. P. 18a "applies to criminal cases absent 'any explicit or implicit legislative intent indicating otherwise.'").

[43] TEX. R. CIV. P. 18a(g)(7).

[44] *See* TEX. CODE CRIM. PROC. art. 46.05(m), (n) ("If a stay of execution is issued by the court of criminal appeals, the trial court periodically shall order that the defendant be reexamined by mental health experts to determine whether the defendant is no longer incompetent to be executed;" "If the court of criminal appeals enters a judgment that a defendant is not incompetent to be executed, the court may withdraw any stay of execution issued under Subsection (l), and the trial court may set an execution date as otherwise provided by law.").

would not alter the proceedings that have already occurred, and therefore would not affect our appellate review.[45]

In his motions before the trial court, the appellant specifically sought to have the trial judge "recused" from answering our June 30 order, which required her to file a clarification of the determinations she made at the June 28 hearing. But we did not order the trial judge to conduct additional proceedings or to make additional determinations; we only asked her to make "a written clarification of the standard she followed in making her determination …."[46] Neither she nor the regional presiding judge had the authority to ignore or alter our order that she explain her personal thought process.

Additionally, an appeal of the regional presiding judge's decision, standing alone, would be improper. An order denying a motion to recuse "may be reviewed for abuse of discretion on appeal from the final judgment."[47] Our sister court has, for decades, interpreted a final judgment as one that disposes of all issues and parties in a case.[48] In the instant case, then, the order denying the motion to recuse could be reviewed only on appeal from the final judgment determining the appellant competent to be executed. Because the appellant instead filed an appeal of the order denying his motion to recuse the trial judge, we must dismiss the appeal for

---

[45] *See State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 480 (Tex. Cr. App. 1985) (where defendant filed motion to recuse the trial judge after verdict and sentence were announced but before formal sentencing, recusal motion was moot because "it was impossible to grant the relief requested, that of a trial before a different judge.").

[46] *Green v. State*, No. AP-76,374, 2010 Tex. Crim. App. Unpub. LEXIS 407 (Tex. Cr. App. Jun. 30, 2010) (not designated for publication).

[47] R. Civ. P. 18a(f).

[48] *See, e.g., North East Independent School Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966); *Davis v. McCray Refrigerator Sales Corp.*, 150 S.W. 2d 377 (Tex. 1941).

want of jurisdiction.[49] This holding does not prejudice the right of Article 46.05 appellants with meritorious due-process claims that become apparent only after the case was forwarded to our Court to file with us an original application for a writ of habeas corpus invoking our powers under Article V of the Texas Constitution.[50]

Even if this appeal were properly before us, from the facts presented in the record it does not appear that the regional presiding judge abused his discretion in denying the appellant's motion to recuse the trial judge. A trial judge must be recused if a reasonable person, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge.[51] We review a denied motion to recuse for abuse of discretion,[52] and we will not reverse the trial judge's decision so long as the ruling was within the zone of reasonable disagreement.[53] The appellant cites no reported authority to support his first complaint – that the presiding judge erred in declining to continue the hearing until the trial judge could attend. His second complaint – that the trial judge *ex parte* solicited and adopted verbatim the State's findings of fact – has not been

---

[49] This is not a mere technicality. In AP-76,374 and AP-76,376, we received briefing from the parties on July 15, 2010, and the cases were submitted for our consideration on July 23. In the recusal matter, AP-76,381, the appellant did not file a notice of appeal until July 19, and it was not until October 4 and 15 that we received briefs from the appellant and the State, respectively. Were we to allow parties to file stand-alone appeals from post-trial motions, regardless of the progress of an appeal from the final judgment in the case, it could significantly affect appellate courts' ability to manage their dockets and decide merits appeals in a timely manner.

[50] *See Alba*, 256 S.W.3d, at 689-90 (Cochran, J., concurring) (our original writ jurisdiction "is a power that should be exercised with great caution*,"* but one that can be used to prevent unconstitutional executions when no other remedy is available).

[51] *Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Cr. App. 1992).

[52] R. Civ. P. 18a(f).

[53] *Kemp*, 846 S.W.2d at 306.

determined to be unlawful by our court or the United States Supreme Court.[54]

The presiding judge was within his discretion in declining to recuse the trial judge.

### V. CONCLUSION

Competency-to-be-executed claims are not cognizable on a writ of habeas corpus. They are, however, subject to direct review, under Article 46.05 of the Code of Criminal Procedure. In the instant case, the trial court used the correct standard in examining the appellant's competency, and it did not abuse its discretion in finding that he was competent. The appellant's direct appeal of the denial of his motion to recuse the trial judge is improperly before us. It does not appear that the trial judge abused his discretion in denying the appellant's motion to recuse the trial judge. We lift the appellant's stay of execution.

Delivered June 27, 2012.
Publish.

---

[54] The appellant notes that the United States Supreme Court has criticized the practice of trial courts adopting verbatim findings of fact prepared by the State. The court has never, however, ruled such practices – whether solicited *ex parte* or not – to be unlawful. *See Jefferson v. Upton*, 130 S. Ct. 2217, 2223, 176 L.Ed.2d 1032, 1039-40 (2010); *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985).