OWEN, Circuit Judge,
concurring:
I concur fully in the court’s opinion.
I note that Green does not explicitly assert a claim that he is entitled to a new hearing because of changes in circumstances since the competency hearing in 2010. He essentially discusses facts that came into existence after the 2010 hearing as tangential support for his argument that he was and continues to be incompetent. It is far from clear that Green has raised a claim separate and apart from his challenge to the 2010 proceedings that would necessitate consideration of whether such a claim, if any, is “unexhausted” within the meaning of AEDPA.
In any event, AEDPA’s exhaustion requirements do not appear to apply to a claim that Green is entitled to a new hearing based on conditions that have changed since 2010, if indeed Green has made such an assertion. My understanding of the Supreme Court’s decision in Panetti v. Quarterman[1] is that a defendant subject to a sentence of death could initiate more than one competency proceeding in a state court over time, and habeas petitions separately challenging each state-court competency proceeding would not necessarily be considered successive under AEDPA. Each proceeding might depend on the facts that obtained at the time of the competency hearing, particularly when relatively long periods of time had passed between adjudications of competency. Additionally, a determination that a defendant was incompetent to be executed would not vacate the sentence of death. The sentence would remain, but, as a constitutional matter, it could not be enforced unless and until the defendant became competent to be executed.
These differences distinguish competency-to-be-executed proceedings from the types of proceedings at issue in Rose v. Lundy[2] and Rhines v. Weber.[3] In Lundy, which predated AEDPA by fourteen years, the Supreme Court held that “federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims.”[4] The Supreme Court explained that the underlying concern in allowing federal courts to adjudicate “mixed” petitions containing exhausted and unexhausted claims was that “it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.”[5] But allowing a federal court to consider the merits of a habeas proceeding in which a state has adjudicated the competency of a defendant to be executed at a particular point in time does not overturn a conviction. Competency may still be at issue in future state court proceedings. Each competency proceeding may well be a discrete proceeding that *422 is largely if not entirely independent of the outcome of prior incompetency proceedings. The concept of “exhaustion” under the law prior to AEDPA and under AED-PA therefore does not fit such claims, at least not in all circumstances. A decision by a federal district court that a defendant is or is not entitled to habeas relief in a competency-to-be-executed proceeding does not necessarily resolve, and in many cases will not resolve, whether, over the course of time, circumstances have changed and the defendant is no longer competent or conversely, has become competent. Perhaps most importantly, it would make no sense, and would defeat the purpose of habeas proceedings, to wait until a series of competency hearings in state court had been concluded before a federal court addressed the merits of any of them. The potential for future, “unexhausted” claims of competency-to-be-executed claims would loom.
I note that Green has not once but twice waited until the eleventh hour to raise claims that he is incompetent. The evidence in the affidavit from another inmate regarding Green’s behavior after 2010 was known and available to Green many, many months before he sought relief in the federal district court on September 28, 2012. If Green is in fact asserting that he should receive a new hearing based on developments after 2010, then this claim should not be considered by this court due to its last-minute nature.
I also write to address whether the state courts properly applied the competency standard discussed in Panetti. Green, like the defendant in Panetti suffers from delusions. The Supreme Court said in Panetti that the “legal inquiry concerns whether these delusions can be said to render him incompetent.”[6] The Court further explained that “the execution of an insane person simply offends humanity” and that “it is uncharitable to dispatch an offender into another world, when he is not of a capacity to fit himself for it.”[7] The Supreme Court admonished that the lower courts should have considered “Petitioner’s submission ... that he suffers from a severe, documented mental illness that is the source of gross delusions preventing him from comprehending the meaning and purpose of the punishment to which he has been sentenced.”[8] In Green’s competency proceedings, the state courts did consider this argument.
The Texas Court of Criminal Appeals considered and cited the state trial court’s factual findings in this regard.[9] The state trial court referred to, among other evidence, Green’s own testimony at the competency hearing and Green’s statements to his expert witness. The trial court specifically noted that Green was able to name his trial counsel and his current attorney, as well as the “first, second, and third attorneys” in his case. The trial court observed, “You knew that you had the right to have trial counsel and appellate counsel, and I further find that you appreciated the adversarial nature of the trial and proceedings.” Green told his expert witness during her assessment of him that he had been imprisoned for killing Christine Neal, specifically naming the victim, but denying his guilt. He told his expert when asked if he understood what “competency to be executed” means that “You evaluate me to see if I’m smart enough to *423 die I guess.” He then said when asked if he knew that he was going to be executed, “I hope not.” He said that the date of his execution was “the 30th of this month” and that this date was “18-19 days” away. When asked if he knew the reason for the execution, he said, “They accused me of killing somebody and they sentenced me to deathrow but I’m not guilty.” This is evidence that Green possessed considerable cognitive ability. It is also evidence that he connected the penalty of death as punishment for a crime of murder and that he believed that morally, he should not be put to death for such a crime because he was not guilty of the crime. His detailed complaints regarding the fairness of his trial for the murder of Christine Neal indicate that he appreciated the immorality in convicting someone of a crime when the trial was procedurally flawed. He expressed “hope” that he would not be put to death, maintaining his innocence and relying on errors allegedly committed during his trial.
The Texas Court of Criminal Appeals recognized that the “record contains evidence that would support a finding of competency or incompetency.”[10] It then concluded that “there was sufficient evidence here to support the trial court’s ruling; we cannot find that its determination was outside the zone of reasonable disagreement.”[11] This was a correct assessment. The state court’s application of the law to the facts in this case was not unreasonable.
Accordingly, I concur.

. 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).

. 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

. 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).

. Rhines, 544 U.S. at 273, 125 S.Ct. 1528.

. Lundy, 455 U.S. at 518, 102 S.Ct. 1198 (quoting Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

. Panetti, 551 U.S. at 956, 127 S.Ct. 2842.

. Id. at 958, 127 S.Ct. 2842 (quoting Ford v. Wainwright, 477 U.S. 399, 407, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)).

. Id. at 960, 127 S.Ct. 2842.

. Green v. State, 374 S.W.3d 434 (Tex.Crim.App.2012).

. Id. at 444.

. Id.