**[Cite as *State v. Blair*, 2023-Ohio-291.]**

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 22AP0005 |
| TIMOTHY BLAIR | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Morgan County Court of Common Pleas, Case No. 20CR0034

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: January 30, 2023

APPEARANCES:

For Plaintiff-Appellee

MARK J. HOWDYSHELL
19 East Main Street
McConnelsville, OH 43756

For Defendant-Appellant

EVAN WAGNER
3970 Brown Park Drive, Ste. B
Hilliard, OH 43026

*Gwin, P.J.*

{¶1} Appellant, Timothy Blair ["Blair"] appeals the January 25, 2022 judgment entry of the Morgan County Court of Common Pleas, Morgan County, Ohio overruling his motion to suppress.

### Facts and Procedural History

{¶2} On November 10, 2020, the Morgan County Grand Jury returned an Indictment charging Blair with one count of Driving While Under the Influence of Alcohol in violation of R.C. 4511.19(A)(1)(a), a felony of the third degree as a result of Blair having been convicted of the same or similar offense as a felony on August 3, 2018 in Noble County Court of Common Pleas, Case No. 217-2090. [Docket No. 1].

{¶3} On November 23, 2021, trial counsel for Blair filed a motion to suppress evidence. On December 7, 2021, the trial court began the evidentiary hearing on the motion. The suppression hearing was concluded on January 24, 2022.  The following evidence was presented during the suppression hearing.

{¶4} On August 22, 2020, Ohio State Highway Patrol Trooper Jared Miller received a report from dispatch of a blue pickup truck sitting in the traveled portion of the roadway on the opposite side of a rural county road, Center Bend Road, also known as Township Road 939, in Center Township, Morgan County, Ohio. It was reported that a man was passed out behind the wheel of the truck. 1T. at 7.

{¶5} Trooper Miller testified he arrived on the scene at approximately 15:33 hours, or 3:33 p.m. 1T. at 7; 2T. at 60.  Trooper Miller initially approached Blair's truck from the passenger side and observed the window was down, Blair appeared to be asleep and breathing normally.  Trooper Miller attempted to run the vehicle's plate

numbers to identify the person behind the wheel. However, at this point, Trooper Miller was having communication issues with dispatch due to the remoteness of the area, and therefore, he could not obtain an identification from dispatch.

{¶6} Eventually, dispatch informed Trooper Miller that the license plate did not belong to the blue pick-up truck. Trooper Miller testified he then approached the vehicle from the driver's side. Blair woke up, and Miller observed unopened cans of Natural Light beer in the vehicle. Trooper Miller testified that the cans were wet with condensation. Trooper Miller further found a bag of groceries with a receipt from Save A Lot with a time stamp of 13:09 or 1:09 p.m. 2T. at 55; State's Exhibit 1. Trooper Miller then asked Blair where he was coming from, and testified, "He said he was just coming out from out the road." 1T. at 12. Trooper Miller testified that this was "a little bit" a satisfactory answer. Id.

{¶7} Trooper Miller asked Blair what he was doing. Blair told Trooper Miller he was taking a nap. Trooper Miller was able to see a can of alcohol that was open near the driver's side floorboard that caused the dust on the floorboard to turn into a muddy paste. Trooper Miller reported he observed Blair to have bloodshot and glassy eyes. He further testified he could smell the odor of an alcoholic beverage inside the truck. Trooper Miller had Blair exit the truck. Trooper Miller was able to smell the odor of an alcoholic beverage emanating from Blair's person. The encounter was recorded by the trooper's cruiser camera.

{¶8} Blair's driver's license was under suspension for a prior OVI, so Blair had only a state identification card on his person. 1T. at 18. After being placed in the trooper's

cruiser and being advised of his *Miranda* rights, Blair refused the trooper's request to perform the standardized field sobriety tests. 2T. at 71-72.

{¶9} Although no key to the vehicle was found, Trooper Miller confirmed that the truck was able to be started without the key.

{¶10} Trooper Miller transported Blair to the Morgan County Sheriff's Office for chemical testing. Blair submitted to a chemical urinalysis screen at 18:30 hours, or 6:30 p.m.

{¶11} By Judgment Entry filed January 22, 2022, the trial court overruled Blair's motion to suppress ruling that Trooper Blair had probable cause to arrest Blair for OVI and driving under a suspended license.

{¶12} On February 17, 2022, Blair pled no contest to the sole count of the indictment. The trial court accepted Blair's plea of no contest and found Blair guilty of violating R.C. 4511.19(A)(1)(a). The trial court deferred sentencing and ordered that a Pre-sentence Investigation Report be prepared.

{¶13} On April 19, 2022, the trial court sentenced Blair to a twenty-four-month prison sentence, a two thousand dollar fine, and a three-year operator's license suspension.

### Assignment of Error

{¶14} Blair raises one Assignment of Error,

{¶15} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY WAY OF OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN WHOLE OR IN PART."

*Law and Analysis*

**{¶16}** In his sole assignment of error, Blair contends that the trial court erred in finding that Trooper Miller had probable cause to arrest Blair for driving under the influence of alcohol.

**Standard of Appellate Review**

**{¶17}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra*, *citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight

should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**Issue for appellate review:** *Whether the trooper had probable cause to arrest Blair for driving under the influence of alcohol*

<u>*Blair admitted that he drove the truck*</u>

{¶18}   In the case at bar, Blair was indicted for a felony OVI as a violation of R.C. 4511.19(A)(1)(a) ["under the influence"].

{¶19}   R.C. 4511.19 provides in relevant part,

(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

Blair admitted to Trooper Miller that he, Blair, had driven the truck to the location where the trooper found it parked on the traveled portion of the wrong side of the roadway. 1T. at 12.

<u>*Warrantless arrest*</u>

{¶20}   A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13

L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1162(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589(1975).

{¶21} As Justice Cook noted,

[P]robable cause" is a term of art. As early as 1813, the United States Supreme Court noted that "the term 'probable cause' * * * has a fixed and well-known meaning." *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364, 367. A finding of probable cause requires more than a mere suspicion of guilt but less evidence than that required to sustain a conviction. *See Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890. *See, also, Melanowski v. Judy* (1921), 102 Ohio St. 153, 156, 131 N.E. 360, 361, *citing Ash v. Marlow* (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus (defining probable cause as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged"). More recently, we stated that probable cause is "a term that has been defined as '"a reasonable ground for belief of guilt."'"

*State v. Moore* (2000), 90 Ohio St.3d 47, 49, 734 N.E.2d 804, 807, *quoting*

*Carroll v. United States* (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69

L.Ed. 543, 555.

*State v. Scott,* 92 Ohio St.3d 1, 8, 748 N.E.2d 11(2001) (Cook, J., concurring).

**{¶22}** The totality of the facts and circumstances can support a finding of probable

cause to arrest even where no field sobriety tests were administered. *State v. Homan*, 89

Ohio St.3d 421, 732 N.E.2d 952(2000), *superseded by statute on other grounds as stated*

*in State v. Boczar*, 113 Ohio St.3d 148, 863 N.E.2d 155, 2007–Ohio–1251. In *Homan,* the

facts which supported a finding of probable cause were: red and glassy eyes, breath which

smelled of alcohol, erratic driving and an admission that the suspect had consumed

alcohol. In *State v. Lominack*, 5th Dist. Stark No. 2012CA00213, 2013-Ohio-2678, this

Court observed,

> The case law is in agreement that probable cause to arrest may exist,
> even without field sobriety tests results, if supported by such factors as:
> evidence that the defendant caused an automobile accident; a strong odor
> of alcohol emanating from the defendant; an admission by the defendant
> that he or she was recently drinking alcohol; and other indicia of intoxication,
> such as red eyes, slurred speech, and difficulty walking. *Oregon v.*
> *Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742(1972); *Fairfield v. Regner*,
> 23 Ohio App.3d 79, 84, 491 N.E.2d 333(12th Dist. 1985); State *v. Bernard,*
> 20 Ohio App.3d 375, 376, 485 N.E.2d 783(9th Dist. 1985); *Westlake v.*
> *Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241(8th Dist. 1983); *State v.*
> *Judy*, 5th Dist. No. 2007–CAC–120069, 2008–Ohio–4520, ¶ 27.

*Lominack*, ¶ 33.

**{¶23}** Furthermore, a police officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. *See State v. Harrop*, 5th Dist. No. CT2000–0026 (July 2, 2001), *citing Atwell v. State*, 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist. 1973); *State v. Hollis,* 5th Dist. Richland No. 12CA34, 2013-Ohio-2586, ¶ 28.

**{¶24}** In the case at bar, the probable cause to arrest Blair for OVI was supported by the trooper's observation of glassy eyes, odor of alcohol, open and unopened cans of beer in the passenger compartment of the truck, Blair being slumped over the steering wheel at the time of the trooper's arrival, and the position of the truck in the traveled portion on the wrong side of the roadway. Blair admitted that he had driven the truck to the location where it was found. 1T. at 12. Trooper Miller confirmed that the truck could be started without the key.

### *Proscribed level of alcohol content in one's blood, breath, or urine*

**{¶25}** Blair next argues that the results of his urine test are inadmissible because the sample was not collected within three hours of his operation of the truck.

**{¶26}** At the outset we note that the indictment in the case at bar did not charge Blair with a per se violation of R.C. 4511.19(A)(1)(e); rather the indictment specified only "driving under the influence" in violation of R.C. 4511.19(A)(1)(a).

**{¶27}** As the Ohio Supreme Court stated, "we first noted that in 1983, the General Assembly had amended R.C. 4511.19 to make 'it illegal to operate a vehicle not only while under the influence of alcohol, but also with a proscribed level of alcohol content in one's

blood, breath, or urine.' *State v. Lucas,* 40 Ohio St.3d 100, 103, 532 N.E.2d 130 (1988). The effect of the General Assembly's amendment was to divide R.C. 4511.19 into two classification of offenses: the offense of operating a vehicle while under the influence, and the "per se" offense." *State v. Hassler,* 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶10 [footnote omitted].

{¶28} Per se offenses make the blood-alcohol content an element of the offense. The trier of fact must find only "that the defendant operated a vehicle * * * and that the defendant's chemical test reading was at the proscribed level." *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988).

{¶29} In contrast, for "driving under the influence" in violation of R.C. 4511.19(A)(1)(a)*,*

> The amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed. 1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant which is the crucial issue... The test results, if probative, are merely considered in addition to all other evidence of impaired driving in a prosecution for this offense.

*Lucas*, 40 Ohio St.3d at 104, 532 N.E.2d 130.

{¶30} In *Lucas*, the Ohio Supreme Court noted that a "per se" violation is committed where the amount of alcohol in an individual's bodily substances exceeds the proscribed statutory amount. Id. at 103, 532 N.E.2d 130. The court stressed that accuracy

is critical and that allowing admission of chemical analyses of substances withdrawn after the [three]-hour limit would cause "confusing, unreliable, and inconsistent verdicts." Id. at 104, 532 N.E.2d 130. Accordingly, the court held that in such situations, the results may be admitted in evidence "only if the bodily substance is withdrawn within two [currently three] hours of the time of the alleged violation." Id.

{¶31}  However, test results derived from blood or urine that was withdrawn more than three hours after an alleged violation of R.C. 4511.19(A) are not categorically inadmissible. As one court has explained,

> However, "a blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) * * *, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered." *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, ¶19; *see Luca*s at paragraph two of the syllabus. Therefore, the admissibility of test results of belatedly drawn blood depends on the type of OVI that the results are being offered to prove, i.e., whether the results are being offered to prove an under-the-influence OVI or a per se OVI, the particular circumstances of the blood draw and subsequent testing, and the availability of expert testimony.

*State v. Robinson,* 3rd Dist. Allen No. 1-19-79, 2020-Ohio-4880, ¶11; *State v. Hollis,* 5th Dist. Richland No. 12CA34, 2013-Ohio-2586, ¶38.  We find the same analysis would apply to a urine draw.

{¶32} In the case at bar, Blair did not allege either in his written motion to suppress filed November 23, 2021 nor during the suppression hearing that the administrative requirements of R.C. 4511.19(D) were not substantially complied with concerning the collection or testing of his urine sample. Therefore, even if Blair's urine was collected more than three hours after the incident, it does not bar the admission of the evidence assuming the state can offer expert testimony at trial. *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶ 19.

{¶33} In any event, because Blair was not charged or convicted of a "per se" offense, the test results are not necessary in order to find Blair guilty of "driving under the influence" in violation of R.C. 4511.19(A)(1)(a).

Conclusion

{¶34} The evidence produced at the evidentiary hearing on Blair's motion to suppress supports the inference that Blair's consumption of alcohol on the night in question adversely affected his actions, reactions, conduct, movement or mental processes or impaired his reactions to an appreciable degree, thereby lessening his ability to operate his car on the night in question. Further, it was undisputed that Blair's driver's license was suspended at the time he operated the truck.

{¶35} Trooper Miller's testimony represents competent, credible evidence that Blair was operating his vehicle while under the influence of alcohol. Therefore, Trooper Miller had probable cause to arrest Blair for driving under the influence in violation of R.C. 4511.19(A)(1)(a), in addition to arresting Blair for driving under a suspended driver's license. Accordingly, the trial court did not err when it denied Blair's motion to suppress on the basis that Trooper Miller had probable cause to arrest Blair for driving under a

suspended driver's license and driving under the influence in violation of R.C. 4511.19(A)(1)(a).

{¶36} Blair did not challenge whether the administrative requirements of R.C. 4511.19(D) were substantially complied with concerning the collection or testing of his urine sample. Therefore, the urine test results admissibility at trial will depend on whether the state can offer expert testimony. Accordingly, the trial court correctly overruled Blair's motion to suppress the urine test results.

{¶37} Because Blair was not charged or convicted of a "per se" offense, the test results are not necessary in order to find Blair guilty of "driving under the influence" in violation of R.C. 4511.19(A)(1)(a).

{¶38} Blair's sole Assignment of Error is overruled.

{¶39} The judgment of the Morgan County Court of Common pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur